**SDJ, INC., d/b/a Sugar Babes, et al., Plaintiffs-Appellants,**

v.

**The CITY OF HOUSTON, et al., Defendants-Appellees.**

No. 86–2735.

United States Court of Appeals, Fifth Circuit.

Feb. 10, 1988.

Rehearing and Rehearing En Banc Denied March 15, 1988.[*]

---

**\*** Opinion on rehearing, 841 F.2d 107.

Karrie Key, Joel M. Androphy, David H. Berg, Berg & Androphy, Houston, Tex., for SDJ, Inc., et al.

Jack R. Burns, Bellevue, Wash., for M.E.F. Enterprises, Inc. & MKD Enterprises.

Robert J. Collins, Sr. Asst. City Atty., Gilbert D. Douglas, Houston, Tex., for defendants-appellees.

Before REAVLEY, WILLIAMS, and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

The City of Houston enacted a detailed ordinance imposing licensing and zoning restrictions upon sexually oriented businesses. The owners of 23 topless bars subject to the regulations filed suit in federal district court lodging a number of facial attacks on the Ordinance. The district court, with three exceptions not complained of here, upheld the Ordinance. *See SDJ,*

*Inc. v. City of Houston,* 636 F.Supp. 1359 (S.D.Tex.1986).

The owners press numerous issues on appeal. First, they challenge the Ordinance on first amendment grounds, claiming that the City failed to prove that it had a substantial interest in regulating their businesses, that the Ordinance is "narrowly tailored" to the City's interest in regulation, and that the Ordinance leaves open ample alternative channels of communication. The owners also claim the Ordinance delegates too much discretion to an administrative officer, and that its signage provisions are impermissibly intrusive. Second, the owners challenge the Ordinance on fifth and fourteenth amendment grounds, arguing that the Ordinance constitutes a taking of property and is overbroad and vague, thus violating plaintiff's due process rights. Third, the owners challenge the Ordinance on equal protection grounds, claiming that the Ordinance is unconstitutional because it regulates only certain forms of sexually oriented businesses, is not gender neutral, and imposes signage regulations that do not apply to the rest of the business community. Finally, the owners challenge the Ordinance on state law grounds, claiming that the Ordinance conflicts with preemptive Texas state statutes regulating businesses at which alcoholic beverages are sold and exceeds the authority of the state enabling act. We reject these contentions and affirm.

I

In 1982, the City of Houston formed a special committee to study the effects of sexually oriented businesses within the City and to determine what regulation was necessary. The committee conducted public hearings, studied the regulations and experiences of other cities, and concluded that sexually oriented businesses can exert a dehumanizing influence on persons attending churches or schools, can contribute to an increase in criminal activity, can contribute to the impairment of character and quality of residential neighborhoods, and, when concentrated in one area, can contrib-

ute to a decline in value of surrounding property.

The Houston City Council adopted the committee's report and proposed ordinance in December, 1983. The ordinance, No. 83–1812, regulated the location, decor, and signage of all sexually oriented businesses except adult bookstores, adult movie theatres, and sexually oriented businesses licensed to sell alcoholic beverages. A state enabling statute, TEX.REV. CIV.STAT. ANN. art. 2372w, prohibited the city's regulation of the excepted businesses.

In 1985, however, the Texas legislature amended the enabling statute to delete the prohibition against regulating businesses licensed to sell alcoholic beverages. The prohibition against regulating adult book stores and movie theatres was not changed. After the amendment, the City of Houston reconvened the City Council's Committee on Sexually Oriented Businesses to study whether sexually oriented businesses licensed to sell alcoholic beverages had the same deleterious effects on the community as did those businesses regulated under the original ordinance. Again public hearings were held, and the committee filed with the City Council a supplemental report concluding that sexually oriented businesses serving alcohol had the same effects as the businesses that did not serve alcohol.

In March, 1986, the City Council adopted the supplemental report and enacted Ordinance No. 86–323. The Ordinance subjects certain businesses, including topless bars, to licensing requirements. A business cannot qualify for a license if it is located within 750 feet of a church, school, or licensed day care center, if it is located in an area that is more than 75% residential, or if it is located within 1000 feet of another sexually oriented business. The Ordinance also imposes restrictions on the exterior decor and signage of those businesses, limiting the number and verbiage of signs and requiring buildings to be painted achromatically. The Ordinance also contains detailed provisions delineating application, revocation, suspension, and appeal proce-

dures. Plaintiffs challenge this second Ordinance.

## II

■ In *City of Renton v. Playtime Theatres, Inc.*,[1] the Supreme Court tested a city zoning provision similar to the Houston ordinance. The City of Renton prohibited sexually oriented businesses from locating near churches, residential zones, schools, and parks.[2] The Court upheld the ordinance, finding it to be a valid time, place or manner restriction. The Court submitted the Renton ordinance to the analysis reserved for content-neutral restraints, although the ordinance marked businesses by the content of their product.[3]

The Court provided two reasons for applying more deferential scrutiny. First, the ordinance could be treated as content-neutral because its purpose was not to curb speech having a particular content, but was rather to curb the *effects* of certain businesses.[4] As long as the City's *"predominant concern"* was to control the negative secondary effects of sexually oriented businesses, the Renton ordinance could draw distinctions between kinds of businesses on the basis of their unique effects without engaging in content-based regulation.[5]

Second, the Court recognized that the conduct of "businesses that purvey sexually explicit materials" receives less first amendment protection than other forms of protected activity. As the Court put it, " 'society's interest in protecting this type of expression is of a wholly different, and lesser, magnitude than the interest in untrammeled political debate....' "[6]

This reasoning applies equally to the Houston Ordinance. The type of activity it regulates is the same as in *City of Renton.* Likewise, the findings of the Houston council as to the secondary effects of sexually oriented businesses satisfy us, as they did the district court, that the city's predominant concern was with secondary effects and not the content of expression itself. Thus, we test the constitutionality of the Ordinance, by the time, place, and manner of its regulation.

■ Applying this test requires the City to prove that the Ordinance is narrowly tailored to serve a substantial interest and that it leaves open alternative channels of communication.[7] Plaintiffs contend that the district court erred in finding that the City had met this burden because, although a city can rely on validated studies of other cities to establish its own interest,[8] here the City of Houston failed to present any evidence that it had relied on such studies or had conducted its own valid study. They contend that the evidence the City did present consisted of "mere conclusory and speculative findings unsupported by empirical evidence."

■ In determining the appropriate level of findings here, we note that the "legislative" exercise of police power, in an area such as zoning, is subject to deferential review.[9] An inquiry into the actual purposes of a zoning regulation is a difficult and intrusive undertaking for courts. Ordinarily a zoning regulation comports with due process if "there was any possible rational basis for legislation."[10] This deference serves the interests of federalism

---

1. 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986); *see also Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976) (plurality opinion).

2. *See City of Renton,* 106 S.Ct. at 926–27.

3. *See id.* at 929.

4. *See id.*

5. *See id.* at 930.

6. *Id.* at 929–30 n. 2 (quoting *American Mini Theatres,* 427 U.S. at 70, 96 S.Ct. at 2452); *see also FCC v. Pacifica Foundation,* 438 U.S. 726,

746, 98 S.Ct. 3026, 3038, 57 L.Ed.2d 1073 (1978) (plurality opinion).

7. *City of Renton,* 106 S.Ct. at 930.

8. *See id.* at 931.

9. *See Shelton v. City of College Station,* 780 F.2d 475, 479 (5th Cir.1986) (en banc), *cert. denied,* —— U.S. ——, 107 S.Ct. 89, 93 L.Ed.2d 41 (1986).

10. *Id.* at 481.

and relatedly, reflects the limits of the judicial role.

■ The first amendment of course alters our role, and our review necessarily becomes more intense to the extent zoning affects protected speech. Under the rigorous scrutiny given content-based speech restrictions, for example, a state's finding that certain speech carries a "clear and present danger" may not alone carry the day; vindication of values secured by the first amendment requires courts to make a fresh inquiry into the likely effect of the speech.[11] While sexually oriented materials are due less protection than other forms of expression, their regulation by zoning nonetheless triggers a more intensive level of scrutiny.

It is true that the effect on speech here is said to be incidental to a regulation aimed at the secondary effects of a business whose activities are within the legitimate scope of the state's police power. Yet, unlike our review under a standard of rationality, we will not hypothesize such an objective or accept a naked assertion. Rather, we intrude into the regulatory decision process to the extent that we insist upon objective evidence of purpose—a study or findings. Insisting upon findings reduces the risk that a purported effort to regulate effect is a mask for regulation of content. That is, evidence of legitimate purpose is supported by proof that secondary effects actually exist and are the result of the business subject to the regulation. At the same time, it is apparent that as we increase the required precision in findings, we increasingly encounter the difficulties we found unacceptable in *City of College Station.* Our task in setting the level of review is to strike for that point of equilibrium that vindicates first amendment values at the least cost to a state's decisional arrangements.

■ Thus, as the Court explained in *City of Renton,* a city may establish its "substantial interest" in the regulation by compiling a record with evidence that it may be "reasonably believed to be relevant to the problem that the city addresses."[12] We do not ask whether the regulator subjectively believed or was motivated by other concerns, but rather whether an objective lawmaker could have so concluded, supported by an actual basis for the conclusion. Legitimate purpose may be shown by reasonable inferences from specific testimony of individuals, local studies, or the experiences of other cities. This level of scrutiny best accomodates the need to ensure proper purposes with the limited competence of courts to discern ephemeral legislative motivations.

■ The record reflects that the City Council carefully considered the relationship between sexually oriented businesses and neighborhood effects. The City formed a special Committee on Sexually Oriented Businesses, which heard public testimony from both supporters and opponents of the Ordinance, as well as experts. The committee also considered studies conducted by other cities such as Detroit, Boston, Dallas, and Los Angeles. While it may not be enough simply to tailor one ordinance to another that has survived judicial review, we are persuaded that the City Council considered those studies themselves and not merely the ordinances for which the studies provided support. Although the 1986 supplemental report relates no empirical evidence of the effects of topless bars, that report incorporates the 1982 report, which does refer to topless bars. We are persuaded that the City met its burden under *City of Renton* to establish that there was evidence before it from which the Council was entitled to reach its conclusion and was "relevant to the problem that the city addresses."[13] The district court did not err in finding that the

---

11. *See Landmark Communications, Inc. v. Virginia,* 435 U.S. 829, 843–44, 98 S.Ct. 1535, 1543–44, 56 L.Ed.2d 1 (1978).

12. *City of Renton,* 106 S.Ct. at 931.

13. *Id.* at 931.

City had proved a substantial interest in the regulation of businesses subject to the Ordinance.

For these same reasons the Ordinance also meets the standard we applied in a pre-*Renton* decision, *Basiardanes v. City of Galveston*.[14] In *Basiardanes*, we reversed the district court's finding that a Galveston sexually oriented business ordinance was constitutional, holding that the city had failed to prove a justifiable interest in the regulation because "there is no evidence in the record that the Galveston City Council passed Ordinance 78–1 after careful consideration or study of the effects of adult theaters on urban life."[15] As we have explained, the record in this case supports exactly the opposite conclusion.

Plaintiffs also argue that the City has failed to prove that the restrictions imposed by the Ordinance are "narrowly tailored" to meet these interests.[16] According to plaintiffs, there is no actual connection between the distancing restrictions of the Ordinance and the City's interest in regulation. The argument continues that the City must prove that 750 feet, as opposed to some other distance, is necessary to serve the City's interest.

At the outset, we note that although the Supreme Court has required "narrow tailoring" even within the area of content-neutral regulations,[17] it is not clear what level of exactitude is appropriate.[18] In *City of Renton*, opponents of the ordinance contended that the city failed to prove narrow tailoring because the city had not demonstrated that its method of regulation, concentrating the businesses away from other uses, was more appropriate than dispersing the businesses from each other. The argument did not persuade the *City of Renton* court. The Court instead found that the choice was within the ambit of Renton's legislative discretion:

> "It is not our function to apprise the wisdom of [the city's] decision to require adult theatres to be separated rather than concentrated in the same areas.... [T]he city must be allowed a reasonable opportunity to experiment with solutions to admittedly serious problems."[19]

In decisions dealing with local restrictions on political and religious solicitation, other circuit courts have struggled to define the narrowness required in an otherwise valid time, place, or manner regulation. At one extreme, the Third Circuit decided that any narrowness requirement is satisfied so long as the regulation meets the second-prong of the content-neutral analysis: that it leaves ample alternative channels of communication.[20] At the other extreme, the Eighth Circuit demanded that a time, place, or manner restraint be sufficiently narrow that it uses the "least restrictive means" available to achieve the government's interest.[21] The Seventh Circuit has adopted the Eighth Circuit's approach.[22]

---

**14.** 682 F.2d 1203 (5th Cir.1982).

**15.** *Id.* at 1215.

**16.** *City of Renton*, 106 S.Ct. at 931.

**17.** *See, e.g., United States v. O'Brien*, 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968) (holding that a content-neutral restraint is valid only if "the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest"); *see also Village of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 637, 100 S.Ct. 826, 836, 63 L.Ed.2d 73 (1980).

**18.** *See generally* Geoffrey R. Stone, *Content-Neutral Restrictions*, 54 U.Chi.L.Rev. 46 (1987) (discussing various levels of review applied to content-neutral regulations).

**19.** *City of Renton*, 106 S.Ct. at 931 (quoting *Young v. American Mini Theatres*, 427 U.S. at 71, 96 S.Ct. at 2452).

**20.** *See Tacynec v. City of Philadelphia*, 687 F.2d 793, 797–98 (3d Cir.1982).

**21.** *See Association of Community Organizations for Reform Now v. City of Frontenac*, 714 F.2d 813, 818 (8th Cir.1983); *see also New York City Unemployed & Welfare Council v. Brezenoff*, 677 F.2d 232, 237–39 (2d Cir.1982).

**22.** *See City of Watseka v. Illinois Public Action Council*, 796 F.2d 1547, 1554 (7th Cir.1986); *Wisconsin Action Coalition v. City of Kenosha*, 767 F.2d 1248, 1254 (7th Cir.1985).

In light of *City of Renton*, we decline to apply these standards to this case. The Third Circuit's approach seems inconsistent with the Court's explicit discussion of *both* narrow tailoring and alternative channels of communication. The emphasis on "least restrictive means" adopted by the Eighth and Seventh Circuits is also inappropriate. First, it fails to recognize—as the *Renton* opinion noted—the importance of permitting cities to experiment with means to remedy unwanted secondary effects. Indeed, the Eighth Circuit's test may have been precluded by the Supreme Court's decision in *United States v. Albertini.* [23] In approving a time, place or manner regulation applying to military bases, the Court noted:

> Nor are [content-neutral] regulations invalid simply because there is some imaginable alternative that might be less burdensome on speech. [*Clark v. Community for Creative Non–Violence*, 468 U.S. 288, 104 S.Ct. 3065, 3072, 82 L.Ed.2d 221 (1984).] Instead, an incidental burden on speech is no greater than is essential, and therefore is permissible under [*United States v.*] *O'Brien*, [391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968),] so long as the neutral regulation promotes a substantial government interest that would be achieved less effectively absent the regulation. *Cf.* [*Clark*], 104 S.Ct. at 3071 ("if the [national] parks would be more exposed to harm without the sleeping prohibition than with it, the ban is safe from invalidation under the First Amendment"). The validity of such regulations does not turn on a judge's agreement with the responsible decisionmaker concerning the most appropriate method for promoting significant government interests.[24]

Under this standard, in other words, an ordinance is sufficiently well tailored if it effectively promotes the government's stated interest.[25]

■ In addition, narrow tailoring is less important when the potential for overbreadth burdens a category of speech subject to less than full first amendment protection; sexually-oriented expression falls into such a category.

■ We hold, then, that the City of Houston has selected a distance within a legislative range that is sufficiently tailored to the city's interest in the Ordinance to satisfy the first amendment. The City has chosen 750 feet as the proper distance and it is clear that the purposes of the Ordinance, in the words of *Albertini,* "would be achieved less effectively" but for regulation of this order. We will not second-guess the Council's decision that 750 feet is the most appropriate distance.

■ With regard to the second prong of the *City of Renton* test, plaintiffs claim that the Houston Ordinance does not leave open ample alternative avenues of communication because it leaves only 40 sites available for their businesses, all of which are unavailable or unsuitable for commercial uses. We note first that the district court applied the correct test. As the *City of Renton* court put it, the appropriate inquiry was whether the Ordinance "refrain[s] from effectively denying respondents a reasonable opportunity to open and operate an adult theater within the [C]ity." [26] In concrete terms, this means

**23.** 472 U.S. 675, 105 S.Ct. 2897, 86 L.Ed.2d 536 (1985).

**24.** *Id.*, 105 S.Ct. at 2907.

**25.** Several circuit courts have noted *Albertini*'s clarification of the tailoring requirement. *See*

*In re G. & A. Books, Inc.*, 770 F.2d 288, 297–98 (2d Cir.1985); *Kev, Inc. v. Kitsap County*, 793 F.2d 1053, 1059 n. 3 (9th Cir.1986).

**26.** *City of Renton*, 106 S.Ct. at 932; *see also Basiardanes*, 682 F.2d at 1214 (holding that a

that alternative sites need not be commercially viable: "That respondents must fend for themselves in the real estate market, on an equal footing with other prospective purchasers and lessees, does not give rise to a First Amendment violation." [27]

■ The district court also did not err in finding that plaintiffs are not denied a "reasonable opportunity" to operate topless bars. Several experts testified as to potential alternative sites, estimating that "at least 100" and perhaps up to "tens of thousands" alternative sites exist. The 40 sites to which plaintiffs refer are those identified by one expert who studied approximately 20% of the City of Houston. Undoubtedly, other sites exist in the remaining 80% of the City.

■ Plaintiffs also argue that the Ordinance violates the first amendment because

it represents an overly broad delegation of administrative authority in that the police chief, as director, has absolute power. The Ordinance provides that the Chief of Police, as director, *shall* issue a permit unless one of eight [28] specific exceptions exist. The plaintiffs argue that the district court erred in finding that the Ordinance provides adequate standards because it allows the director to revoke a permit when there are three or more violations of Ordinance regulations without requiring that there be convictions for those violations. Thus, plaintiffs contend, the fact that the chief of police may simply "conclude" that violations have occurred gives him absolute power.

In *Keyishian v. Board of Regents,* [29] the Supreme Court held that the test of whether a delegation scheme is permissible is whether the standards are "susceptible of objective measurement." [30] The Houston Ordinance is couched in mandatory language with eight explicit exceptions, and it

court must consider the effect of the alternative locations).

**27.** *City of Renton,* 106 S.Ct. at 932.

**28.** The ordinance originally listed nine exceptions; however, the district court struck down one requiring the applicant to comply with all federal and state laws on the ground that it did not provide adequate guidance and delegated too much discretion to the director of the ordinance. The remaining eight exceptions are as follows:

(1) The applicant's enterprise is located within 750 feet of any school, church, or licensed day care center. Measurements shall be made in a straight line, without regard to intervening structures or objects, from the nearest point on the property line of the applicant's enterprise to the nearest point on the property line of such school, church, or licensed day care center;

(2) The applicant's enterprise is located within 1000 feet of any other enterprise for which there is a permit. Measurements shall be made in a straight line, without regard to intervening structures or objects, from the nearest point on the property line of the applicant's enterprise to

the nearest point on the property line of any other enterprise;

(3) Seventy-five percent (75%) or more of the tracts within a circular area, as described herein, are residential in character. The radius of such circular area shall be 1000 feet, and the center of such circular area shall correspond to the midpoint of a line joining the two most distant points on the boundary of the tract on which the enterprise is located;

(4) The applicant failed to supply all of the information requested on the application;

(5) The applicant gave materially false, fraudulent or untruthful information on the application;

(6) The applicant's enterprise is not in compliance with Section 28–129 and Section 28–130 of this Article;

(7) The application or the enterprise does not meet any other requirements of this Article; or

(8) The operator has had a permit revoked for the same enterprise within the one hundred eighty (180) day period next preceding the date that the application was filed.

**29.** 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967).

**30.** *Id.* at 604, 87 S.Ct. at 684.

provides for immediate review of any decision to deny a permit. The grant of discretion is based on definitive, intelligible standards and is not unbridled. We cannot say that the district court erred in finding that these standards are consistent with the first amendment.

 Plaintiffs' final first amendment argument is that the Ordinance's signage requirements constitute an impermissible intrusion upon their protected interests. This argument is based on our pre-*Renton* holding in *Basiardanes*. In *Basiardanes*, this court struck down a provision of the Galveston ordinance that prohibited all advertising of adult theatres. This court found that the interest of shielding the public from lurid advertising was strong and legitimate, but held that the restriction of the Galveston ordinance totally banning all advertising was not narrowly tailored to that interest since it prohibited even "simple signs." [31]

The Houston Ordinance, however, does not ban advertising completely; it merely requires appellants to employ "simple signs." Governments have the right to regulate and limit the content of advertisements within reason, [32] and we are not persuaded that the City here has overstepped its bounds.

### III

Plaintiffs claim that the Ordinance is unconstitutional because it violates their Fifth

and Fourteenth Amendment rights. First, plaintiffs claim that the Ordinance constitutes a taking of property because its amortization provisions are inadequate. Second, they claim that the Ordinance violates plaintiffs' due process rights because it does not provide a neutral decisionmaker. Third, plaintiffs claim that the Ordinance is unconstitutionally vague because its definitions are susceptible to multiple interpretations. Finally, plaintiffs claim that the Ordinance is impermissibly overbroad in that it criminalizes conduct that is otherwise lawful.

 We are unpersuaded by any of these arguments. First, the police power of a municipality is broad and includes restricting the uses of property. [33] Almost by definition, the Ordinance here does not prevent all reasonable uses of plaintiff's property; it follows that the Ordinance is not a taking. [34] Second, plaintiffs' due process rights are not violated because the chief of police is the director. There is no evidence that a chief of police is inherently not neutral, and in many situations, a chief of police may be in the best position to administer time, place, and manner restrictions. [35] We cannot view the director's role in a vacuum. The Ordinance provides for appellate review by individuals other than the police chief, and thus we cannot say that due process is implicated. Third, plaintiffs' argument that the Ordinance's definitions are vague is not persuasive. A common sense reading of these definitions shows that they are adequately precise. [36]

---

**31.** *Basiardanes,* 682 F.2d at 1219.

**32.** *Lehman v. City of Shaker Heights,* 418 U.S. 298, 303, 94 S.Ct. 2714, 2717, 41 L.Ed.2d 770 (1974); *Borrago v. City of Louisville,* 456 F.Supp. 30, 32 (W.D.Ky.1978).

**33.** *See Keystone Bituminous Coal Assoc. v. De-Benedictis,* —— U.S. ——, 107 S.Ct. 1232, 1245, 94 L.Ed.2d 472 (1987).

**34.** *See First English Evangelical Lutheran Church of Glendale v. County of Los Angeles,* —— U.S. ——, 107 S.Ct. 2378, 2389, 96 L.Ed.2d 250 (1987).

**35.** For example, licenses to speak in a public place logically may be issued by the police department.

**36.** Plaintiffs challenge the definitions of "enterprise," "specified sexual activities," and "specified anatomical areas." The ordinance defines these terms as follows:

> *Enterprise*
> An adult cabaret, adult encounter parlor, adult lounge, adult modeling studio, or any establishment whose major business is the offering to customers of a product or service which is intended to provide sexual stimulation or sexual gratification to such customers, and which is distinguished by or characterized by an emphasis on matter depicting,

Finally, the Ordinance is not overbroad in that it criminalizes conduct that is otherwise lawful. The plaintiffs argue that the effect of the Ordinance is to treat the same conduct—exposure of certain bodily parts—differently depending on the location of the conduct. Although Texas courts have held that different punishments for the same criminal acts depending on where the act occurred violates the fifth amendment,[37] no court has held that it is unconstitutional to criminalize conduct performed in certain locations while the same conduct is not criminal when performed in others. It is not criminal to consume alcohol on one's back porch; it is criminal to do so while driving an automobile.

## IV

Plaintiffs claim that the Houston Ordinance violates the equal protection rights of topless bars because it regulates only one form of sexually oriented business and not others, because it is not gender neutral, and because the Ordinance's signage provisions single out topless bars for different treatment. Again, we are unpersuaded.

First, the Ordinance does not deny plaintiffs equal protection because it regulates topless bars but does not regulate adult bookstores and theatres. This argument fails to recognize the fact that adult theatres and bookstores still are specifically exempted from the state enabling act, and thus the City has no authority to regulate these businesses.[38] The argument also ignores that the Ordinance here was enacted as a companion to an earlier ordinance that specifically excluded topless bars due to preemption by state law. Furthermore, the Supreme Court dismissed a similar "under-inclusive" argument in *Renton*, stating, "That Renton chose first to address the potential problems caused by one particular kind of adult business in no way suggests that the city has 'singled out' adult theaters for discriminatory treatment." [39]

Second, plaintiffs argue that the Ordinance is unconstitutional because it is not gender neutral in that it prohibits exposure of female breasts but not male breasts, and that to do so, the City must prove a "vital state interest in allowing males to expose their breasts." This is not the correct test. Of course, this Ordinance is facially discriminatory, but to uphold its constitutionality, we need conclude only that regulation of *female* breasts is substantially related to an important governmental interest, not that the exposure of *male* breasts is so related. At best, the test is not strict scrutiny, but an intermediate level of review.[40] The district court

---

describing or relating to specified sexual activities or specified anatomical areas. The term "enterprise" shall not be construed to include (1) any "adult bookstore," or "adult movie theatre," as those terms are defined herein, (2) any business operated by or employing licensed psychologist, licensed physical therapists, licensed athletic trainers, licensed cosmotologists, or licensed barbers performing functions authorized under the licenses held, (3) any business operated by or employing licensed physicians or licensed healing arts, or (4) any retail establishment whose major business is the offering of wearing apparel for sale to customers.
*Specified Sexual Activities*
(1) Human genitals in a discernible state of sexual stimulation or arousal, or
(2) Acts of human masturbation, sexual intercourse or sodomy, or
(3) Any combination of the foregoing.
*Specified Anatomical Areas*
(1) Less than completely and opaquely covered:

(i) Human genitals, pubic region or pubic hair, or
(ii) Buttock, or
(iii) Female breast or breasts below a point immediately above the top of the areola, or
(iv) Any combination of the foregoing; or,
(2) Human male genitals in a discernibly erect state, even if completely and opaquely covered.

**37.** *See Memet v. State,* 642 S.W.2d 518 (Tex.App. —Houston [14th Dist.] 1982, no writ).

**38.** *See* Tex.Rev.Civ.Stat.Ann. art. 2372w (Vernon Supp.1987).

**39.** *Renton,* 106 S.Ct. at 931.

**40.** *See Craig v. Boren,* 429 U.S. 190, 197, 97 S.Ct. 451, 456, 50 L.Ed.2d 397 (1976); *see also City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 105 S.Ct. 3249, 3255, 87 L.Ed.2d 313 (1985) ("A gender classification fails unless it is substantially related to a sufficiently important government interest.").

did not err in holding that such regulation of female breasts is substantially related to the City's interest in regulation.

Finally, plaintiffs claim that the Ordinance violates their equal protection rights because the signage restrictions imposed under the Ordinance far exceed the reasonable restrictions placed on other businesses and thus single out topless bars for different treatment. Because topless bars are not a "protected class," the City need only demonstrate that the signage restrictions are reasonably related to a legitimate government interest.[41] The district court did not err in holding that the City had demonstrated that the signage restrictions were rationally related to the legitimate interest in preventing detrimental effects on minors.

## V

Plaintiffs contend that the Ordinance cannot be enforced because it conflicts with the Texas Alcoholic Beverage Code,[42] a preemptive state statute regulating businesses at which alcoholic beverages are sold and because it exceeds the authority of the state enabling act, article 2372w. We are not persuaded by either of these arguments.

First, plaintiffs contend that because article 2372w provides that "the existing preemption by the state of regulation of alcoholic beverages" is not affected by the article, that any ordinance adopted under the authority of article 2372w must contain identical provisions to the Texas Alcoholic Beverage Code and that the Houston Ordinance impermissibly deviates from the 300 foot distancing restrictions of the Alcoholic Beverage Code. However, the preemption clause of that Code speaks only to the governance of the "manufacture, sale, distribution, transportation, and possession of alcoholic beverages."[43] The Houston Ordinance regulates sexually oriented businesses, not alcoholic beverages. While Texas courts have struck down ordinances that specifically regulate the sale of alcoholic beverages as conflicting with the alcohol code,[44] those courts also have recognized that where the sale of alcoholic beverages is not directly regulated, zoning schemes can be enacted in addition to the scheme set out in the alcohol code.[45]

Second, we are not persuaded that the Ordinance exceeds the authority of the state enabling act. Plaintiffs argue that article 2372w allows a city either to restrict the locations of businesses or to incorporate distancing restrictions but not both. They argue that the use of the word "or" indicates that the legislature intended to provide mutually exclusive options. However, the Texas Court of Appeals has held explicitly that the statute provides authority to restrict the location of the enterprises *and* to enact distancing restrictions.[46] We must give deference to the Texas courts' interpretation of a Texas statute.

AFFIRMED.

---

**41.** *Cf. Massachusetts Bd. of Retirement v. Murgia,* 427 U.S. 307, 312, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976).

**42.** Tex.Alco.Bev.Code Ann. § 1.01 *et seq.* (Vernon 1978).

**43.** Tex.Rev.Civ.Stat.Ann. art. 2372w (Vernon Supp.1987).

**44.** *See, e.g. City of Wichita Falls v. Abell,* 566 S.W.2d 336 (Tex.Civ.App.—Ft. Worth writ ref'd n.r.e.) (striking down an ordinance requiring off-premises liquor licenses).

**45.** *See Young, Wilkinson & Roberts v. City of Abilene,* 704 S.W.2d 380, 382 (Tex.App.—Eastland 1985, writ ref'd n.r.e.); *Banknote Club and Stan's Boilermaker v. City of Dallas,* 608 S.W.2d 716, 718 (Tex.Civ.App.—Dallas 1980, writ ref'd. n.r.e.).

**46.** *See Memet v. State,* 642 S.W.2d at 522 ("Thus, the enabling legislation authorizes not only restriction of location, but also density, and, additionally, allows prohibition entirely in some areas."). Although article 2372w has been amended since *Memet,* the particular language in question was not altered.