**ENVY LIMITED, a Kentucky Corporation, Plaintiff,**

v.

**The CITY OF LOUISVILLE, a Municipality, Defendant.**

**Civ. A. No. C–87–0060–L(M).**

United States District Court, W.D. Kentucky, at Louisville.

Jan. 18, 1990.

Stephen P. Durham and Benjamin C. Johnson, Louisville, Ky., for plaintiff.

F. David Banks, Louisville, Ky., for defendant.

## MEMORANDUM OPINION AND ORDER

MEREDITH, District Judge.

Pending before the Court is the motion of the plaintiff, Envy Limited, for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Federal jurisdiction is properly invoked in that plaintiff's claim for relief is under 42 U.S.C. § 1983 thereby invoking the jurisdiction of this Court under 28 U.S.C. § 1343(a)(3).

This action seeks declaratory relief regarding the Constitutionality of City Ordinance No. 320, Series 1987. The ordinance was enacted as law on November 20, 1987 by the defendant, the City of Louisville. The ordinance regulates the location and operation of adult entertainment establishments including "cabarets" which feature nude dancing. The plaintiff operates a cabaret.

The ordinance prohibits any establishment licensed to engage in adult entertainment from displaying any form of entertainment in any medium between the hours of 12:00 midnight and 6:00 A.M. Ordinance Section 111.003(E). The ordinance provides as a prerequisite to the issuance of a license to engage in adult entertainment that any applicant for such a license to make disclosures as to the name, address, social security number, age, photograph, and

criminal record, if any, of each and every owner, director, and employee of any business wishing to engage in adult entertainment and any person making application for licensure on behalf of any business so applying. The ordinance further requires the disclosure of information regarding the ownership of any business applying for licensure and regarding the ownership of the premises where the business so applying is to be located. Ordinance Section 111.004(A).

A series of five public hearings for the purpose of taking testimony as to various aspects of adult entertainment commenced on March 11, 1987. Testimony was given by law enforcement officials, medical personnel, neighbors to adult entertainment facilities, persons knowledgeable in real estate values, specialists in assessing the problems relating to adult entertainment, the City licensing official and a representative from the adult entertainment business.

The plaintiff challenges the Constitutionality of this ordinance alleging a failure on the part of the City of Louisville to support their recommendations with facts established in the record. More specifically, the plaintiff asserts that there is insufficient evidence to restrict the hours of operation of cabarets from 12:00 midnight to 6:00 a.m. and there is insufficient evidence to require the disclosure of the true owners of cabarets prior to licensing.

This case is governed by the United States Supreme Court decision in *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976). In *Young*, the Court examined zoning ordinances which differentiated movie theaters that exhibited sexually explicit adult movies and required, as in the case at bar, that an adult theater could not be located within 1,000 feet of any two other regulated uses or within 500 feet of a residential area. The operators of two adult motion picture theaters challenged the ordinance as violative of the First and Fourteenth Amendments. The Supreme Court specifically held that the interest of the City in preserving the character of neighborhoods overrides the First Amendment element in the

display of sexually explicit material at any location. Therefore the court allowed the City, in the interest of preserving the neighborhood, to restrict the areas in which adult theaters could be located.

■ Later, in *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981), the Supreme Court distinguished *Young* and invalidated an ordinance which prohibited all live entertainment. The Borough had not narrowly tailored the zoning law to address any particular problems that it alleged were the basis of banning live entertainment. In *Young*, motion picture theaters were not totally banned but instead were dispersed.

> The court has, in addition, held that:
> "there is surely a less vital interest in the uninhibited exhibition of material that is borderline between pornography and artistic expression than in the free dissemination of ideas of social and political significance ..."

*Young*, 96 S.Ct. at 2448. Furthermore, "the customary bar room type of nude dancing may involve only the barest minimum of protected expression." *California v. LaRue*, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972). The state may use the content of sexually explicit material as the basis for differentiating it from other material without violating the Constitution. *Young*, 96 S.Ct. at 2452.

Where the content of the material is used merely to differentiate and the ordinance addresses solely the *secondary effects* of the material the ordinance is not proscribed by the First Amendment. *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 106 S.Ct. 925, 928, 89 L.Ed.2d 29 (1986).

> "It was with this understanding in mind that ... a majority of this Court decided that, at least with respect to businesses that purvey sexually explicit materials, zoning ordinances designed to combat the undesirable secondary effects of such businesses are to be reviewed under the standards applicable to 'content neutral' time, place, and manner regulations."

*City of Renton*, 106 S.Ct. at 929–30. The appropriate inquiry for "content neutral

time, place and manner" regulations is whether the ordinance is "designed to serve a substantial governmental interest and allows for reasonable alternative avenues of communication." *City of Renton,* 106 S.Ct. at 930. The desire to address the secondary effects of adult entertainment in an attempt to "preserve the quality of urban life is one that must be accorded high respect." *Young,* 96 S.Ct. at 2453.

The Supreme Court in *City of Renton* rejected the assessment of the Court of Appeals that:

"because the Renton ordinance was enacted without benefit of studies specifically relating to 'particular problems or needs of Renton,' the city's justifications for the ordinance were 'conclusory and speculative' ... We think the Court of Appeals imposed on the city an unnecessarily rigid burden of proof.

\*　　\*　　\*　　\*　　\*　　\*

We hold that Renton was entitled to rely on the experiences of Seattle and other cities, and in particular on the 'detailed findings summarized in the Washington Supreme Court's *Northend Cinema* [*v. City of Seattle,* 90 Wash.2d 709, 585 P.2d 1153 (1978)*]* opinion, in enacting its adult theater zoning ordinance. The First Amendment does not require a city, before enacting such an ordinance, to conduct new studies or produce evidence independent of that already generated by other cities, so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problems that the city addresses."

*City of Renton,* 106 S.Ct. at 930–31.

Section 111.003(E) of Ordinance 320, Series 1987, pertains to restrictions on hours during which entertainment is permitted at adult entertainment establishments. The ordinance in effect prior to the above-mentioned ordinance restricted entertainment from 2:00 A.M. to 6:00 A.M. The newly enacted ordinance provides:

"An establishment licensed to engage in adult entertainment shall not permit any person to conduct, show, stage or perform any entertainment, whether live or on film or video tape or to perform mas-

sage between the hours of 12 Midnight and 6:00 A.M."

The plaintiff operates a cabaret which is defined as follows:

"An establishment which features as a principal use of its business, entertainers and/or waiters and/or bartenders, male or female impersonators and/or persons, either male or female, who expose to public view of the patrons and said establishment at any time the bare female breast below a point immediately above the top of the areola, human genitals, pubic region, or buttocks, even if partially or completely covered by translucent material, and/or human or simulated male genitals in a discernible turgid state, even if completely and opaquely covered."

Section 111.002.A(7), Ordinance No. 320, Series 1987. The disclosure requirements challenged by the plaintiff provide as follows:

A. The owner or operator of an establishment intending to engage, or engaging under a previously issued license, in an adult entertainment activity shall make application for a license with the Director in accordance with this Section. Such application shall be in writing, under oath, and shall be in the form prescribed by the Director and shall contain the following information together with such further information as the Director may require.

"(1) The name and location of the establishment and the name and business address of the applicant.

"(2) The name, address, date of birth, social security number and photograph of a natural person with an ownership interest in the licensee, such natural person to be determined as follows:

"(a) If the licensee is one or more natural persons, then all such natural persons shall comply, or any one natural person may comply for the licensee upon certification that he owns a greater share of the licensee than any other person.

"(b) If the licensee is a partnership then the natural person designed at the managing general partner in the partnership

agreement (a copy of which is to be attached to the license application) shall comply, but if the partnership agreement designates no natural person as a managing general person, then the natural person who by virtue of his interest or holding in the partnerships and/or corporations which have formed the partnership owns a greater share of the licensee than any other single natural persons shall comply.

"(c) If the licensee is a corporation, the natural person, if any, who owns a greater number of shares than any other person shall comply, but if the person owning the greatest number of shares is not a natural person, then the natural person who by virtue of his interests or holdings in one or more partnerships or other corporations which own shares in the licensee owns a greater portion of the shares in the licensee than any other individual natural person shall comply.

"(3) The name and address of all directors and officers of any licensee or applicant which is a corporation, and the name and address of the licensee's designated agent for service of process.

"(4) In the event the applicant or licensee is not the owner of record of the real property on which the licensed establishment is located or to be located, the application shall include a notarized statement from the owner of record of the real property acknowledging that an adult entertainment establishment is to be located on the real property upon the issuance of the license. The applicant also shall furnish the name and address of the owner of record of the real property and a copy of the lease or rental agreement or memorandum thereof.

"(5) The name, address, date of birth, social security number and photograph of all persons engaged in the day to day management of the licensed premises. If the licensee is to engage in the sale, rental or showing of books or movies distinguished or characterized by an emphasis on matter depicting or relating to sexual activities as herein defined, then all persons designated to engage in the selection of such books and movies to be offered for sale or rental or to be shown on the licensed premises, shall be included in the provisions of this paragraph. All persons who at any time shall be responsible for attending the entrance of the establishment for the purpose of insuring compliance with the provisions of Subsection C of Section 111.003 of this ordinance shall be included in the provision of this paragraph.

"(6) The name, address, date of birth, social security number and photograph of the individual designated by the applicant to undertake to keep the applicant, if licensed, at all times in compliance with the restrictions, requirements and conditions hereof and with the rules and regulations promulgated by the Director pursuant to Section 111.005 hereof together with the sworn affidavit of said individual stating that he has received a copy of this ordinance, that he understands the restrictions, requirements and conditions hereof, and that he willfully undertakes on behalf of the applicant to comply therewith.

"(7) The name, address, date of birth, social security number and photograph of the individual designated by the applicant or licensee to be responsible for keeping the information required hereunder current at all times together with a sworn affidavit of said individual stating that he has received a copy of this ordinance, that he understands the requirements hereof pertaining to disclosure of information and that he willfully undertakes on behalf of the applicant to comply therewith.

"(8) The name and addresses of any rental agent of the property on which the establishment is located.

"(9) The nature of the activity or activities to be engaged in at such location.

"(10) All criminal convictions other than traffic violations of the applicants, owners, directors, partners, or employees whose names are required pursuant to this Section 111.004(A). Any such person who is on parole shall submit to the Director the terms of such parole.

"(11) The name and address of any person to whom the applicant wants mail no-

tice to be given in case of violation or other matters affecting the license hereunder.

"(12) A photograph or drawing of any signs displayed or proposed to be displayed on the exterior of the establishment and a statement of the dimensions of such signs.

"(13) Proof of registration with the Commissioners of the Sinking Fund and proof of compliance with City occupational license fee laws.

"(14) A Certificate of Occupancy where required and in all other cases, a Letter of Compliance issued by the Zoning Inspector of the City of Louisville certifying that the business is in compliance with applicable zoning laws or has nonconforming use rights and that the proposed use will not constitute an enlargement or expansion of the scope of such nonconforming rights.

"(15) A certificate from the chief of the division of fire or his designee that all applicable fire regulations have been met and, in the case of an adult amusement arcade, that all requirements of Section 111.003(F) of this Ordinance have been met.

"(16) A statement from the Director that the premises comply with applicable provisions of the Uniform Kentucky Building Code, as adopted by the City of Louisville.

"(17) A statement from the Director of Public Health Services of the Louisville and Jefferson County Board of Health that the premises are adequately ventilated and contain public restrooms which satisfy the requirements of 902 KAR 10:010. The said Director of Public Health Services or his designee shall cause the premises of each licensee to be inspected quarterly to determine continued compliance with the provisions of this Section."

Section 111.004.A, Ordinance No. 320, Series 1987.

■ The essence of plaintiff's Constitutional challenge to the above listed restrictions is that the City of Louisville, though receiving evidence regarding adult entertainment businesses in general and their secondary effects, did not receive and therefore did not rely upon, in their enactment of this ordinance, evidence which spe-cifically noted problems associated with cabarets.

This Court, as in *Renton*, believes that the plaintiff seeks to impose on the City an "unnecessarily rigid burden of proof." *City of Renton*, 106 S.Ct. at 930. The City must merely demonstrate a reasonable relationship between the ordinance and the problems it faces. Objective evidence of purpose through studies or findings prevents the City from masking a regulation of content by an apparent regulation of secondary effect. *SDJ, Inc. v. City of Houston*, 837 F.2d 1268, 1274 (5th Cir. 1988).

"In determining the appropriate level of findings here, we note that the 'legislative' exercise of police power, in an area such as zoning, is subject to deferential review.

\* \* \* \* \* \*

Legitimate purpose may be shown by reasonable inferences from specific testimony of individuals, local studies, or the experience of other cities."

*SDJ, Inc.*, 837 F.2d at 1273–1274. It is worth noting that a cabaret is a subspecies of adult entertainment businesses. Section 111.002. Throughout the testimony offered at the public hearings, cabarets were mentioned specifically in, as plaintiff demonstrates in his motion for summary judgment, 300 lines of testimony. However, there is nothing in the record which excluded cabarets when testimony was offered as to the general category of adult entertainment establishments which by definition includes cabarets. Therefore it is inaccurate to represent that the secondary effects of cabarets were only discussed in plaintiff's dissected 300 lines of testimony. Instead the numerous references to adult entertainment establishments throughout the testimony from the five public hearings includes cabarets unless specifically excluded. In *SDJ, Inc.*, the Circuit Court notes that the 1986 supplemental report adopted by the Houston City Council did not mention topless bars but incorporates an earlier study which does mention topless bars which were the subject of the ordinance restrictions. The Circuit Court affirmed

the District Court finding that the City met its burden under the *City of Renton* decision. *SDJ, Inc.*, 837 F.2d at 1274. This Court, upon extensive review of the five public hearings, finds that substantial evidence exists regarding the secondary effects of adult entertainment establishments including cabarets. Specifically, as the ordinance sets forth in Section 111.001 entitled Findings, Declaration of Public Policy and Purpose, the noise and increased crime rate during the hours between midnight and 6:00 A.M. justifies the modest reduction in hours of operation from 12:00 A.M. to 6:00 A.M., leaving eighteen hours in each day in which the adult entertainment establishments may operate. The City found that the extensive involvement of organized crime in adult entertainment activities, as stated by Captain William C. Johnson of the Fayetteville, North Carolina Police Department, an expert in investigation of organized crime involvement in adult entertainment, necessitates disclosure of true owners of these establishments to aid in enforcement of criminal laws, public and safety regulations and income tax laws. J. Michael Brown, the Director of the City of Louisville Office of Inspections, Licenses and Permits, testified that the annual license fee not only does not cover the licensing costs but in no way pays for law enforcement activities designed to regulate adult entertainment activities. Thus, an increase in the license fee is necessitated to recoup at least a portion of the costs of enforcement of adult entertainment laws.

For the above-mentioned reasons, the Court finds that the ordinance is rationally related to the reduction in secondary effects resulting from adult entertainment businesses and is therefore within the bounds of the United States Constitution.

IT IS HEREBY ORDERED that the motion of the plaintiff, Envy Limited, for summary judgment be and hereby is OVERRULED the plaintiff having failed to demonstrate that it is entitled to judgment as a matter of law.

IT IS FURTHER ORDERED that plaintiff's motion for expedited review be and hereby is OVERRULED.

IT IS FURTHER ORDERED that the motion of the defendant for enlargement of time in which to file its response to the motion for summary judgment be and hereby is SUSTAINED.

IT IS FURTHER ORDERED that the motion of the defendant for oral argument be and hereby is OVERRULED. The motion requesting restrictions on oral argument is denied as moot.

IT IS FURTHER ORDERED that this action being a claim for declaratory and equitable relief and the Court having denied summary judgment to the plaintiff in the above-listed Order, the Court therefore DENIES declaratory and equitable relief. Title 28, U.S.C. § 2201.

This is a final and appealable judgment, there being no just cause for delay.