**RESTAURANT VENTURES, LLC, d/b/a Thee Clubhouse Pam Gibson; Ken Verba; Wendy Wilfong; Sean Brown; King Kelly, Inc. d/b/a Cowboys; Kelly Jean King; and Linda Coyle, Appellants,**

v.

**LEXINGTON–FAYETTE URBAN COUNTY GOVERNMENT, Appellee.**

and

**Lexington–Fayette Urban County Government, Appellant,**

v.

**King Kelly, Inc. d/b/a Cowboys; Kelly Jean King; Linda Coyle; Capitol Clubs of West Virginia, Inc.; Brett Boozer; Jean Ferguson; Holly Boehm; Stephan Wasson; Mark Biblehauser; Amee Cornn; Restaurant**

Ventures, LLC, d/b/a Thee Clubhouse; Pam Gibson; Ken Verba; Wendy Wilfong; Sean Brown; Norman Entertainment, Inc; Stanley Michael Brown; and Christopher Allan Hoagland, Appellees.

Nos. 1999–CA–000834–MR, 1999–CA–001093–MR.

Court of Appeals of Kentucky.

Jan. 5, 2001.

Discretionary Review Denied Dec. 12, 2001.

Michael Hatzell, Louisville, for Appellants/Cross–Appellees.

Andrea Weddle, Lexington, for Appellee/Cross–Appellant Lexington–Fayette Urban County Government.

Before BARBER, EMBERTON and GUIDUGLI, Judges.

*OPINION*

EMBERTON, Judge:

Several adult entertainment establishments and their employees brought this action challenging the constitutionality of ordinances enacted by the Lexington–Fayette Urban County Government. The ordinances propose to regulate: activities within the establishments; personnel qualifications; licensing requirements; and hours of operation. The trial court upheld certain parts of the ordinances and struck down others as unconstitutional. Both the establishments and the government appeal.[1]

The establishments, all of which serve liquor, feature striptease dancing. In 1997, the local government, in an effort to decrease the adverse secondary effects of all such establishments, enacted a series of ordinances regulating the establishments. Subsequently, the ordinances were amended; most amendments, however, are not relevant to this appeal. Ultimately, the government passed a final version of the Code of Ordinances, portions of which are now challenged on appeal.

The general purpose of the Code, as stated in the preamble, is to reduce sex

---

1. At oral arguments, the only establishment to appear was King Kelly, Inc. There is, however, no motion to withdraw in the record made by any party.

crime and social disease believed to be associated with adult entertainment establishments. Under the ordinance dancers are prohibited from appearing nude which is defined as "appearing in a manner so as to expose to public view the anus, genitals, pubic region, or areola of the female breast."

Nudity alone has historically been prohibited by the common law.[2] Similarly, conduct or material that is classified as obscene is not deserving of constitutional protection.[3] When nudity is combined with dance, however, the courts have had difficulty reconciling the unprotected act of being nude and the expression of ideas through dance.[4] The ancient Greeks used dance as a means of communication; Indian tribal dances are a means of communicating within the tribes as well as for spiritual communication; and ballet and other artistic forms of movement communicate ideas to the audiences. The concept that dance can be more than mere conduct, indeed a mode of expression, is clearly accepted.

At the core of the First Amendment is the basic guarantee to advocate ideas even though those ideas may be unconventional or repugnant to the majority values or morals.[5] Neither the United States Supreme Court, nor this court, has accepted the view, however, that any conduct can be labeled "speech" and thereby become entitled to First Amendment protection "whenever the person engaging in the conduct intends thereby to express an idea."[6]

Despite the *O'Brien* court's unwillingness to hold that all conduct intended to express an idea falls within the ambit of constitutional protection, a splintered majority in *Barnes v. Glen Theatre, Inc.,*[7] held that nude dancing is "expressive conduct within the outer perimeters of the First Amendment though . . . only marginally so."[8] We are, of course, bound by the Supreme Court's interpretation of the First Amendment made applicable to the states through the Fourteenth Amendment of the United States Constitution. The view that nude dancing is a form of ideological expression was confirmed by the Kentucky Supreme Court in *Hendricks v. Commonwealth.*[9] Yet, what idea erotic dancing alone conveys, this court is unable to discern. Mere nude dancing without intent to make a statement, political, social, or otherwise, would seem to be merely for the purpose of sexually arousing the viewer. Nevertheless, we begin our analysis with the proposition that any challenge to a nude dancing ordinance must begin with the First Amendment.

The court in *Barnes, supra,* adopted a four-part test first set forth in *O'Brien, supra,* to determine the constitu-

---

2. *Case v. Commonwealth,* 313 Ky. 374, 231 S.W.2d 86 (1950).

3. *See Roth v. United States,* 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957).

4. It is undisputed that the government can prohibit lewd or obscene conduct regardless of the proposed message sought to be conveyed. *See Roth, supra.* Our discussion assumes that the dances performed by the dancers are not obscene.

5. *Kingsley International Pictures Corp. v. Regents of the University of the State of New York,* 360 U.S. 684, 79 S.Ct. 1362, 3 L.Ed.2d 1512 (1959).

6. *United States v. O'Brien,* 391 U.S. 367, 375, 88 S.Ct. 1673, 1678, 20 L.Ed.2d 672 (1968).

7. 501 U.S. 560, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991).

8. *Id.,* 501 U.S. at 566, 111 S.Ct. 2456.

9. Ky., 865 S.W.2d 332, 336 (1993).

tionality of a ban on nudity. Quoting from *O'Brien*, the court stated:

> This Court has held that when "speech" and "nonspeech" elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms. To characterize the quality of the governmental interest which must appear, the Court has employed a variety of descriptive terms: compelling; substantial; subordinating; paramount; cogent; strong. Whatever imprecision inheres in these terms, we think it clear that a government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.[10]

■ Most recently, in *City of Erie v. Pap's A.M. d/b/a "Kandyland"*,[11] the court revisited *Barnes, supra*, and expanded on the level of scrutiny to be applied to ordinances prohibiting nudity. The issue, the court held, is whether the ordinance or regulation is unrelated to suppression of expression; if so, the less stringent standard from *O'Brien* is appropriate. If related to the content of the expression, a more demanding standard is required.[12]

■ Ordinances that ban nude dancing are generally considered to be content neutral. Increase in sex crimes, social disease and general depreciation of the neigh-

borhood, are secondary effects of adult establishments which the courts have recognized as being within the government's power to control. As explained by the court in *Erie, supra:*

> Even if we had not already rejected the view that a ban on public nudity is necessarily related to the suppression of the erotic message of nude dancing, we would do so now because the premise of such a view is flawed. The State's interest in preventing harmful secondary effects is not related to the suppression of expression. In trying to control the secondary effects of nude dancing, the ordinance seeks to deter crime and the other deleterious effects caused by the presence of such an establishment in the neighborhood.[13]

In an attempt to put much needed reason into the debate regarding erotic behavior and the First Amendment, the court offered the following perspective:

> Similarly, even if Erie's public nudity ban has some minimal effect on the erotic message by muting that portion of the expression that occurs when the last stitch is dropped, the dancers at Kandyland and other such establishments are free to perform wearing pasties and G-strings. Any effect on the overall expression is *de minimis*. And as Justice STEVENS eloquently stated for the plurality in *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 70, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976), "even though we recognize that the First Amendment will not tolerate the total suppression of erotic materials that have some arguably artistic value, it is manifest that society's interest in protecting this type of expression is of a wholly

---

10. *Barnes*, 501 U.S. at 567, 111 S.Ct. 2456.

11. 529 U.S. 277, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000).

12. *Id.*

13. *Erie*, 120 S.Ct. at 1393.

different, and lesser, magnitude than the interest in untrammeled political debate," and "few of us would march our sons or daughters off to war to preserve the citizen's right to see" specified anatomical areas exhibited at establishments like Kandyland. If States are to be able to regulate secondary effects, then *de minimis* intrusions on expression such as those at issue here cannot be sufficient to render the ordinance content based.[14]

■ The provisions of the ordinances before us are content neutral. The government's interest is in combating the secondary effects of adult entertainment establishments. In other words, it is not the message of eroticism that is censored but the act that conveys the message.

The first *O'Brien* factor is unquestionably satisfied since there is no dispute that regulation of the public health and safety are clearly within the government's powers. The second factor, whether the ordinance furthers a substantial or important interest, has been specifically addressed. As explained in *Erie, supra,* the asserted interests in combating the secondary effects associated with nude dancing are undeniably important. And, if left unclear from *O'Brien,* the *Erie* court removed any doubt as to the burden on the government to prove the existence of the adverse effects of such dancing:

> [I]n terms of demonstrating that such secondary effects pose a threat, the city need not "conduct new studies or produce evidence independent of that already generated by other cities" to demonstrate the problem of secondary effects, "so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses." *Renton v. Play-*

*time Theatres, Inc.,* 475 U.S. at 51–52, 106 S.Ct. 925. Because the nude dancing at Kandyland is of the same character as the adult entertainment at issue in *Renton, Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976), and *California v. LaRue,* 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972), it was reasonable for *Erie* to conclude that such nude dancing was likely to produce the same secondary effects. And *Erie* could reasonably rely on the evidentiary foundation set forth in *Renton* and *American Mini Theatres* to the effect that secondary effects are caused by the presence of even one adult entertainment establishment in a given neighborhood. See *Renton v. Playtime Theatres, Inc.,* 475 U.S. at 51–52, 106 S.Ct. 925 (indicating that reliance on a judicial opinion that describes the evidentiary basis is sufficient). In fact, *Erie* expressly relied on *Barnes* and its discussion of secondary effects, including its reference to *Renton* and *American Mini Theatres.* Even in cases addressing regulations that strike closer to the core of First Amendment values, we have accepted a state or local government's reasonable belief that the experience of other jurisdictions is relevant to the problem it is addressing. See *Nixon v. Shrink Missouri Government PAC,* 528 U.S. 377, 120 S.Ct. 897, 908, n. 6, 145 L.Ed.2d 886 (2000).[15]

■ Under *Erie,* the government is not required to demonstrate actual adverse effects in its particular locality. It is enough to show that it is aware of the problems in other locales and the ordinance was passed to prevent or reduce

---

**14.** *Erie,* 120 S.Ct. at 1393–94.

**15.** *Erie,* 120 S.Ct. at 1395.

those effects. It need not await localized proof of those effects.[16]

The third and fourth factors of *O'Brien* are easily satisfied. As discussed, the government interest is unrelated to the suppression of free expression. Finally the restrictions on nude dancing are no more than is necessary to further that government interest. So, while the dancers' conduct is regulated, they are free to express their message wearing only a scant amount of clothing. The ordinance therefore does not attempt to totally suppress the erotic message.

■■■ The establishments make a general argument that the ordinance offends the overbreadth doctrine but without specifically stating which section or sections allegedly offend the doctrine. However, the ordinance when read in its entirety clearly delineates the prohibited conduct. The overbreadth doctrine is limited, and where conduct and not merely speech is involved, as here, the effect must not only be real but also substantial.[17] The mere fact that one can conceive some impermissible application of a statute is not sufficient to render it susceptible to an overbreadth challenge.[18]

■■■ "Adult establishment" and "nudity" are clearly defined and easily understood by people of common intelligence.[19] Appellants' argument that otherwise legal and expressive conduct, such as shaking hands or other non-erotic touching between people, could be prohibited under the ordinance is folly. The ordinance does not prohibit such social niceties (unless done while nude). The line between prohibited conduct and permitted conduct is clearly drawn by the ordinance.

■■■ The contention that the adult entertainment establishments are denied equal protection because the ordinance is not applicable to other bars or taverns was refuted in *Mr. B's Bar and Lounge, Inc. v. City of Louisville:*[20]

> We find no violation of equal protection by reason of the fact that the businesses of the appellants are placed in a different classification than other businesses which sell alcoholic beverages for the purpose of determining what type of signs may be used. The classification has a rational basis, that is, the unique problems involved in advertising of adult entertainment activities, and is therefore not arbitrarily discriminatory or in violation of provisions with respect to equal protection of the laws.

The secondary effects of adult entertainment establishments are unique to those establishments. There is nothing arbitrary or unequal regarding a distinction between adult entertainment establishments or others that sell alcohol.

■■■ The Code of Ordinances defines "entertainment area" as:

> "Entertainment Area" means an area in an adult entertainment establishment consisting of a platform or other structure raised not less than eighteen (18) inches above the immediately surrounding main floor area.

16. *DLS, Inc. v. City of Chattanooga,* 107 F.3d 403, 411 (6th Cir.1997).

17. *Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973).

18. *Hendricks,* 865 S.W.2d at 337.

19. *Id.See also Bright Lights v. City of Newport,* 830 F.Supp. 378 (E.D.Ky.1993); *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990); *DLS, Inc., supra,* 107 F.3d at 412 n. 8; *Envy, Ltd. v. City of Louisville,* 734 F.Supp. 785 (W.D.Ky.1990).

20. Ky.App., 630 S.W.2d 564, 567 (1981).

The ordinance further places restrictions on the conduct of those in the entertainment area:

(3) *Entertainment Area.* No person in an adult entertainment establishment shall engage in any form of entertainment or dancing except while said person is positioned in or occupying an entertainment area, as defined in Section 14–13[ (a) ](10) of this Code, and while the person so dancing, performing, displaying or exhibiting is positioned not less than six (6) feet from any patron or spectator.

(4) *Entertainment Area Exclusion.* No spectator, patron, or persons other than a licensed adult entertainer shall be present in an entertainment area, as defined in Section 14–13(10) of the code, during the course of any adult entertainment, dancing, or performance.

(5) *Physical Contact Prohibition.* While on the premises of an adult entertainment establishment, no adult entertainment employee shall be permitted to have any physical contact with any other adult entertainment employee, other employee, patron or spectator while that adult entertainment employee is entertaining, dancing, or performing and all such performances shall occur only in the entertainment area. An adult entertainment employee shall not touch the breast, buttocks, or genitals of any patron, spectator, or other adult entertainment employee and no patron or spectator shall touch the breast, buttocks, or genitals of any adult entertainment employee or another patron or spectator while on the premises of the adult entertainment establishment.

Although the trial court concluded that the six foot buffer zone and the "no touch" requirements of the code are valid, it held the additional stage area and height requirements to be unconstitutional.

The government contends that the no touch requirement, buffer zone, and stage area and height requirements are all substantially related to the ability to control crime and disease. In *DLS, supra,* the court applied the *O'Brien* analysis and upheld provisions similar to those in the present ordinance. By placing a reasonable distance between the patrons and the performers, there is a decreased opportunity to solicit sex, contract social disease, and renders enforcement of the no touch rule easier.[21] All are legitimate government interests furthered by the ordinance.

■ We disagree with the trial court that the stage and height requirements place an undue burden on the establishments. It is possible, of course, for height requirements and buffer zones to be so large that the establishment could not physically or financially comply and, therefore in effect, suppress the expression of the messages sought to be conveyed.[22] However, in the present case the buffer zone requires only that patrons sit essentially a body length from the performers. And, the stage height requirements of eighteen inches is not overly burdensome and requires only construction of a simple stage.

■ The Code of Ordinances prohibits adult entertainment establishments from operating between the hours of 1:00 a.m. and 3:00 p.m. The trial court found that the hours of operation for adult entertainment establishments that sell alcohol is

**21.** *DLS, supra,* at 411–412.

**22.** *See Threesome Entertainment v. Strittmather,* 4 F.Supp.2d 710, 723–724 n. 10 (N.D.Ohio 1998) (six foot buffer acceptable, but forty-five foot stage elevation not narrowly tailored to further the government's interest).

controlled by the Alcohol Sales Ordinance and preempted by Kentucky Revised Statutes (KRS) 244.295.

The regulation of operating hours of adult entertainment establishments is a valid exercise of the government's power to regulate those establishments. The ordinance regulates the operating hours not because they sell alcoholic beverages, but because of the sexually-oriented nature of the entertainment provided.[23] The ordinance regulating the hours of operation is valid.

The ordinance is upheld in its entirety. To the extent that the trial court's judgment holds certain provisions invalid, it is reversed. The judgment is otherwise affirmed.

BARBER, J., concurs.

GUIDUGLI, J., concurs in result only.