BGHA, L.L.C., d/b/a Camelot, Plaintiff,

v.

CITY OF UNIVERSAL CITY, TEXAS; Floyd Bryant, in his Individual and Official Capacity as Chief of Police; and Wesley Becken, in his Individual and Official Capacity as Mayor, Defendants.

No. CIV.A.SA–00–CA–1473–NN.

United States District Court,
W.D. Texas,
San Antonio Division.

Jan. 24, 2002.

---

John Fahle, III, San Antonio, TX, for plaintiff.

Lowell F. Denton, George Edward Hyde, Denton, Navarro & Bernal, San Antonio, TX, for defendants.

### MEMORANDUM OF DECISION AND ORDER

NOWAK, United States Magistrate Judge.

#### A. Introduction

Plaintiff, BGHA, L.L.C., d/b/a Camelot, an operator of a nightclub where "dancing is provided as entertainment in exchange for a fee," brings this action against Defendants Universal City ("the City"), Texas, the City's Police Chief Floyd Bryant and the City's Mayor Wesley Becken. Plaintiff's lawsuit, filed December 14, 2000, alleges that City Ordinance No. 504, an ordinance which imposes licensing and zoning restrictions on sexually oriented busi-

nesses ("SOBs"), violates its First and Fourteenth Amendments to the United States Constitution. Specifically, plaintiff claims that its business is not an "adult entertainment establishment" within the meaning of the Ordinance. For that reason, plaintiff has not deemed it necessary to procure a license under the Ordinance in order to operate its business. Nevertheless, the City has issued plaintiff over twenty citations for operating a business without a license, in violation of the Ordinance. In this lawsuit, plaintiff complains that the citations, resulting in a campaign of harassment, amount to an "as-applied" prior restraint on its free speech. Plaintiff also argues the Ordinance is unconstitutional on its face as a prior restraint on speech. Through the filing of this lawsuit under 42 U.S.C. § 1983, plaintiff seeks injunctive, declaratory and monetary relief for defendants' alleged constitutional violations.

The District Judge to which this case was originally assigned denied plaintiff's application for a temporary restraining order on December 15, 2000. *See* Docket Entry 3. The Court then referred plaintiff's request for injunctive relief to me for proposed findings of facts and recommendations, consistent with 28 U.S.C. § 636(b)(1). Plaintiff's request for preliminary injunctive relief was subsequently mooted when plaintiff combined its request for injunctive relief with a trial on the merits.

Pending before me are the parties' cross-motions for summary judgment on the following dispositive issues: whether plaintiff's business is an "adult entertainment establishment" subject to the licensing and zoning restrictions of SOB Ordinance No. 504, whether said Ordinance is constitutional as a matter of law, and whether defendants Bryant and Becken are entitled to the defense of qualified immunity when sued in their individual capacities. *See* defendants' motion for summary judgment, filed March 7, 2001 (Docket Entry 18) and plaintiff's response and cross motion for summary judgment, filed March 28, 2001 (Docket Entry 28).[1] On March 9, 2001, upon the parties' consent and consistent with 28 U.S.C. § 636(i), the case was assigned to me for all purposes, including trial and entry of judgment. *See* Docket Entry 20.

Having reviewed the parties' legal arguments and evidentiary support, the summary judgment record as a whole and the applicable case authority, it is my opinion that defendants' motion should be *granted* and plaintiff's cross-motion should be *denied.* The City has established, as a matter of law, that SOB Ordinance No. 504 is a content-neutral restriction on conduct and is justified under the standard originally set forth by the United States Supreme Court in *United States v. O'Brien,*[2] as subsequently applied by the courts, including the United States Supreme Court, to cases involving erotic nude dancing.[3]

---

1. Defendants have also filed a responsive brief to plaintiff's cross-motion for summary judgment and a reply to plaintiff's summary judgment response. Docket Entry 36. On August 1, 2001, plaintiff filed a motion for leave to file its reply to defendants' summary judgment response. Docket Entry 41. By the granting of a previous extension, plaintiff's reply brief was due May 11, 2001. Defendants filed an opposition to plaintiff's motion for leave arguing that leave should be denied because it was not timely requested. Docket Entry 42. Because I find that plain-

tiff's explanations for its untimely filing do not warrant another extension for the filing of a reply, I will enter a separate order denying plaintiff's request. It should be noted, however, that plaintiff's substantive arguments made in its reply have been addressed in this Order, although not formally before the court.

2. 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968).

3. *See* the "Analysis" Section of this Order, at 14–24, *infra.*

The City has provided sufficient evidence of legislative findings made prior to the enactment of the Ordinance supporting the City's reasonable belief that the enactment of the Ordinance would further its interests of better protecting the public health, safety and welfare of its constituents, and would also effectively address the deleterious secondary effects of sexually oriented businesses by enhancing land use protection for residential areas and other surrounding areas. In addition to the legislative findings made prior to the enactment of the Ordinance, the City has also produced current summary judgment evidence supporting its continued "governmental interest" for enforcing the Ordinance. Further, contrary to plaintiff's position, the competent summary judgment evidence demonstrates that the Ordinance, and in particular its location and distance requirements, provides adequate alternative means for sexually oriented expression. Because plaintiff has failed to allege a violation of a clearly established constitutional right as a matter of law, I need not address the defense of qualified immunity raised by defendants Bryant and Becken.

### B. Jurisdiction

The court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983.

### C. Factual Background

Beginning in 1994, Universal City Council members became concerned with the adverse secondary effects sexually oriented businesses were bringing to neighboring communities, such as Bexar County and the City of Leon Valley. The secondary effects at issue consisted primarily of an increase in crime rate, including the use of illegal narcotics, public intoxication and prostitution. The summary judgment record indicates that at the time the City Council was considering drafting an ordinance to regulate sexually oriented businesses, three businesses were already operating in the City unregulated. Two of these businesses consisted of adult-video stores which had been the subject of numerous complaints lodged by City residents.[4] The record further reveals that prior to enacting SOB Ordinance No. 504, the City Council, with the assistance of the City Attorney at the time, researched, studied and extensively discussed the issue, bringing the Ordinance to at least three Council meetings before its adoption on April 5, 1994.[5] The City Council's legislative purpose for enacting SOB Ordinance No. 504 is best embodied in its preamble: "It is the purpose of this Ordinance to regulate Adult Entertainment Establishments to promote the health, safety, morals and general welfare of the citizens of the City, and to establish reasonable and uniform regulations to prevent the concentration of Adult Entertainment Establishments within the City."[6]

Relevant to the instant case, SOB Ordinance No. 504 defines the term "adult entertainment establishment" as including an adult cabaret.[7] An "adult cabaret," is defined as:

a nightclub, bar, restaurant, or similar commercial establishment which regularly features:

a. Persons who appear in a state of nudity; or

b. Live performances which are characterized by the exposure of 'specified anatomical areas,' or by 'specified sexual activities;' or

---

4. Docket Entry 36 (and affidavits attached thereto).

5. *Id.*, Affidavit of Ron Flake, former City Attorney for the City of Universal City, Texas.

6. Docket Entry 18, Exhibit A, SOB Ordinance 504, Article 1, "Purpose and Intent."

7. *Id.* at Exhibit A, § 2.01(B)(1)(a).

c. Films, motion pictures, video cassettes, slides, or other photographic reproductions which are characterized by the depiction or description of 'specified sexual activities' or 'specified anatomical areas.'[8]

The term "nudity" or "state of nudity" is defined in the Ordinance as: "a. [t]he appearance of a human bare buttock, anus, male genitals, female genitals, or female breast; or b. [a] state of dress which fails to opaquely cover a human buttock, anus, male genitals, female genitals, or areola of the female breasts."[9] The Ordinance further defines "specified anatomical areas" as "human genitals,"[10] and "specified sexual activities" as:

a. The fondling or other erotic touching of human genitals, pubic region, pubic hair, perineum, buttocks, anus, or female breasts;

b. Sex acts, normal or abnormal, actual or simulated, including intercourse, oral copulation, sodomy or bestiality;

c. Masturbation, actual or simulated; or

d. Urinary or excretory functions.[11]

The Ordinance requires an owner to obtain a license from the City before he or she may operate a sexually oriented business.[12] Failure to do so subjects the owner to criminal penalties.[13] To obtain a license, an owner must demonstrate, among other things, that the business is in a permissible location.[14] In that regard, the Ordinance requires that the business be located within a "specified zoning district" as set forth in the City of Universal City Zoning Code, and not be situated (1) within five hundred (500) feet of a church, school, daycare center or public park; (2) within three hundred (300) feet of a boundary of a residential district or property line of a residential use; (3) or within one thousand (1,000) feet of another licensee.[15]

While plaintiff does not dispute that it is in violation of the Ordinance because it is located within 300 feet of a residential district, plaintiff does dispute the application of the Ordinance to its business. It is plaintiff's position that its business does not fall within the Ordinance's definition of an "adult entertainment establishment" because the dancers at the nightclub do not appear in a "state of nudity" nor do their performances include any "specified sexual activities."[16] According to plaintiff, "the dancers' costumes include a bikini-type bottom which fully covers the buttocks and genitalia, and they wear 'pasties' which fully and opaquely cover the areola."[17] Besides the pleaded assertions made in its complaint and/or summary judgment briefing, plaintiff has failed to attach any evidence supporting its position on the issue. On the other hand, defendants have provided competent summary judgment evidence to controvert plaintiff's characterization of its business and to argue that the Ordinance does apply to plaintiff's business because it is an "adult cabaret," within the meaning of the Ordinance.[18] As such, defendants maintain

8. *Id.* at Exhibit A, § 2.01(B)(4).

9. *Id.* at § 2.01(B)(15).

10. *Id.* at § 2.01(B)(23).

11. *Id.* at § 2.01(B)(24).

12. *Id.* at § 4.01(A).

13. *Id.* at § 6.01.

14. *Id.* at § 4.02(A)(1).

15. *Id.* at § 3.01(A).

16. Docket Entry 1, ¶ 9, at 4–5.

17. *Id.* at ¶ 9, at 5.

18. In addition to describing plaintiff's business as an "adult cabaret," within the meaning of the Ordinance, the City also views plaintiff's business as a "sexual encounter center" because it offers, as its principal business purpose, "specified sexual activities." Docket Entry 18, at Exhibit A, § 2.01(B)(22).

that plaintiff's present operation of its business without a license violates the Ordinance.

Plaintiff's contention that the Ordinance does not apply to its business is furthered controverted by summary judgment evidence provided by the City which establishes that plaintiff has indeed previously applied for an adult cabaret license in accordance with the Ordinance and that one was issued to plaintiff on May 3, 1995. On August 8, 1996, the City authorized plaintiff to operate as a non-conforming adult entertainment establishment until April 5, 1997, as provided in § 3.02 of the Ordinance, and notified plaintiff that an extension of its non-conforming use needed to be filed no later than by August 30, 1996. On September 3, 1996, plaintiff requested an extension and was granted one for three years to permit amortization of plaintiff's investment in the nightclub.[19] As a result of the extension, the City issued plaintiff, upon application, an adult cabaret license on September 11, 1996, on August 18, 1997, on July 17, 1998 and on April 2, 1999.[20]

On June 1, 1999, the City gave notice to plaintiff that its non-conforming use status terminated on April 5, 2000. Having exhausted the time period for maintaining its non-conforming use status, plaintiff subsequently filed a request for a one-year exemption from the location restrictions pursuant to § 4.08 of the Ordinance. The City Council, however, denied plaintiff's request by unanimous vote on March 21, 2000.[21] On June 13, 2000, the record shows that plaintiff reapplied for an adult cabaret license, which the City denied on August 18, 2000. As a result of its continued operation of a sexually oriented business, in an unauthorized location and without a license, the City and other law enforcement agencies (not limited to the Universal City Police Department) began issuing citations to plaintiff in October of 2000, for violating the Ordinance and other state laws.[22] This lawsuit ensued.

### D. Issues Presented

1. Whether plaintiff's business is an "adult entertainment establishment" as the term is defined in SOB Ordinance No. 504?
2. Whether SOB Ordinance No. 504 is constitutional?
3. Whether plaintiff has established a viable cause of action under 42 U.S.C. § 1983; and if so, whether the defendants Bryant and Becken, sued in

---

**19.** *Id.* at Exhibit D. According to the provisions of the Ordinance, this three-year extension is non-renewable. *Id.* at Exhibit A, § 3.02(A).

**20.** *Id.* at Exhibit D.

**21.** *Id.* at 77. According to § 4.08(C), the City Council may grant an exemption from the location restrictions of § 3.01, if it makes the following findings:

> (1) That the location of the adult entertainment establishment will not have a detrimental effect on nearby properties or be contrary to the public safety or welfare; (2) That the location of the adult entertainment establishment will not downgrade the property values or quality of life in the adjacent areas or encourage the development of ur-

ban blight; (3) That the location of the adult entertainment establishment in the areas will not be contrary to any program of neighborhood conservation nor will it interfere with any efforts of urban renewal or restoration; and (4) That all other applicable provisions of this Ordinance will be observed. *Id.*

The record shows that in denying plaintiff's request for an exemption under this provision, the City Council considered evidence relating to crime statistics (*i.e.,* police data of calls made to the club and police incident reports) and also considered the club's non-compliance with specific procedures and regulations set forth by the Texas Alcohol and Beverage Commission. *Id.,* Exhibit D, at 77–78.

**22.** Docket Entry 1, at Exhibit 2.

their official and individual capacities, are entitled to the defense of qualified immunity?

### E. Summary Judgment Standard

A party is entitled to summary judgment upon motion if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.[23] Mere allegations of a factual dispute between the parties will not defeat an otherwise proper motion for summary judgment; the requirement is that there be no genuine issue of material fact.[24] A fact is material if it might affect the outcome of the lawsuit under the governing law.[25] A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.[26] Therefore, summary judgment is proper if, under governing laws, there is only one reasonable conclusion as to the verdict; if reasonable finders of fact could resolve a factual issue in favor of either party, summary judgment should not be granted.[27]

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.[28] To satisfy this burden, the movant must either submit evidentiary documents that negate the existence of some material element of the nonmoving party's claim or defense, or if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidentiary documents in the record contain insufficient proof concerning an essential element of the nonmoving party's claim or defense.[29] Regardless of whether the moving party accompanies its summary judgment motion with affidavits or other evidentiary materials, the motion must be granted if the evidence before the court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied.[30]

Once the moving party has carried that burden, the burden shifts to the nonmoving party to show that summary judgment is not appropriate.[31] The nonmoving party

---

**23.** FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir.1995); *Neff v. American Dairy Queen Corp.*, 58 F.3d 1063, 1065 (5th Cir.1995), *cert. denied*, 516 U.S. 1045, 116 S.Ct. 704, 133 L.Ed.2d 660 (1996).

**24.** *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**25.** *Id.* at 248, 106 S.Ct. 2505. *See also Thomas v. LTV Corp.*, 39 F.3d 611, 616 (5th Cir. 1994).

**26.** *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202; *Wise v. E.I. DuPont De Nemours & Co.*, 58 F.3d 193, 195 (5th Cir.1995); *MacMillan v. United States*, 46 F.3d 377, 380–81 (5th Cir. 1995).

**27.** *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202; *Kunin v. Feofanov*, 69 F.3d 59, 61 (5th Cir. 1995); and *Banc One Capital Partners Corp.*, 67 F.3d at 1198.

**28.** *Celotex Corp. v. Catrett*, 477 U.S. at 323, 106 S.Ct. 2548; *Wise*, 58 F.3d at 195; *Burfield v. Brown, Moore, & Flint, Inc.*, 51 F.3d 583, 588 (5th Cir.1995).

**29.** *Edwards v. Aguillard*, 482 U.S. 578, 595 n. 16, 107 S.Ct. 2573, 96 L.Ed.2d 510 (1987); and *Celotex Corp. v. Catrett*, 477 U.S. at 325, 106 S.Ct. 2548.

**30.** *Id.*

**31.** *Fields v. City of South Houston*, 922 F.2d 1183, 1187 (5th Cir.1991).

cannot discharge this burden by referring to the mere allegations or denials of the nonmoving party's pleadings.[32] Rather, the nonmoving party's response must, either by submitting opposing evidentiary documents or by referring to evidentiary documents already in the record, set out specific facts showing the existence of a genuine issue for trial.[33] When both parties move for summary judgment, as in this case, each party must carry its own burden as the movant for its motion and as the non-movant in response to the other party's motion.[34] All justifiable inferences must still be drawn in favor of the losing party.[35]

*F. Analysis*

1. *Is Plaintiff's Business An "Adult Entertainment Establishment?"*

■ Plaintiff disputes the application of SOB Ordinance No. 504 to its business, and particularly the issuance of multiple citations for alleged violations of the same, by stating that the dancers at its nightclub do not appear in a "state of nudity," nor do their performances include any "specified sexual activities."[36] According to plaintiff, "the dancers' costumes include a bikini-type bottom which fully covers the buttocks and genitalia, and they wear 'pasties' which fully and opaquely cover the areola."[37] Plaintiff's assertions, however, are not supported by the summary judgment record.

Contrary to plaintiff's position, plaintiff's business is an "adult entertainment establishment" because it engages in activity that falls with the definition of an "adult cabaret." The term "adult entertainment establishment" as defined in the Ordinance expressly includes an adult cabaret.[38] An "adult cabaret," is defined as: "a nightclub, bar, restaurant, or similar commercial establishment which regularly features: a. [p]ersons who appear in a state of nudity; or b. [l]ive performances which are characterized by the exposure of 'specified anatomical areas,' or by 'specified sexual activities...'"[39]

The term "nudity" or "state of nudity" is defined in the Ordinance as: "a. [t]he appearance of a human bare buttock, anus, male genitals, female genitals, or female breast; or b. [a] state of dress which fails to opaquely cover a human buttock, anus, male genitals, female genitals, or areola of the female breasts."[40] The Ordinance further defines "specified anatomical areas" as "human genitals,"[41] and "specified sexual activities" as: "a. [t]he fondling or other erotic touching of human genitals, pubic region, pubic hair, perineum, buttocks, anus, or female breasts; b. [s]ex acts, normal or abnormal, actual or simulated, including intercourse, oral copulation, sodomy or bestiality; c. [m]asturbation, actual

---

**32.** FED.R.CIV.P. 56(e); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 250, 106 S.Ct. 2505; *State of Texas v. Thompson,* 70 F.3d 390, 393 (5th Cir.1995).

**33.** *Celotex Corp. v. Catrett,* 477 U.S. at 324, 106 S.Ct. 2548; *Fields,* 922 F.2d at 1187; *Neff v. American Dairy Queen Corp.,* 58 F.3d at 1065; *Engstrom v. First Nat'l Bank,* 47 F.3d 1459, 1462 (5th Cir.1995), *cert. denied,* 516 U.S. 818, 116 S.Ct. 75, 133 L.Ed.2d 35 (1995).

**34.** *See Blackie v. Maine,* 75 F.3d 716, 721 (1st. Cir.1996).

**35.** *See Murphy Expl. & Prod. Co. v. Oryx Energy Co.,* 101 F.3d 670, 673 (Fed.Cir.1996).

**36.** Docket Entry 1, ¶ 9, at 4–5.

**37.** *Id.* at ¶ 9, at 5.

**38.** Docket Entry 18, Exhibit A, SOB Ordinance No. 504, at § 2.01(B)(1)(a).

**39.** *Id.,* Exhibit A, at § 2.01(B)(4).

**40.** *Id.* at § 2.01(B)(15).

**41.** *Id.* at § 2.01(B)(23).

or simulated; or d. [u]rinary or excretory functions." [42]

Based on the summary judgment evidence presented by defendants, uncontroverted by plaintiff, the dancers at plaintiff's business do appear in a "state of nudity" and they indeed perform "specified sexual activities." According to the affidavit of one of the undercover officers who investigated plaintiff's business on November 29, 2000, the following was discovered:

(1) Six (6) female dancers were not wearing anything over their nipples of their breasts, nor were their breasts painted;

(2) When [the officer] paid for a lap dance, the dancers put their nipples of their breasts inside [the officer's] mouth;

(3) The dancers each touched the penis area of [the officer's] body;

[and]

(4) The dancers wore "G–Strings" which did not cover their buttocks and had nothing covering their breasts.

Similar activity was discovered in other undercover investigations occurring on October 12, 2000, November 17, 2000 and November 22, 2000.[43] The defendants have also provided photographs, taken by undercover law enforcement agents inside plaintiff's nightclub, depicting dancers with their breasts completely exposed, a dancer performing a lap dance with bare breasts and a dancer bending over to expose her bare buttocks.[44] In addition, the defendants have presented the affidavit testimony of the City's Director of Engineering Services, Michelle Mauldin, in which she states:

in conjunction with my employment with the City of Universal City [ . . . ] I have made inspections of the property occupied by BGHA, LLC d/b/a Camelot and have witnessed dancers bare breasted while entertaining and dancers dancing with bare buttocks in "G–Strings" pushing the "G–Strings" aside and fondling themselves and simulating masterbation [sic] for the patrons. I have witnessed the patrons putting their mouths over uncovered breasts of the dancers.[45]

Based on this evidence, there is no question that plaintiff's business meets the definition of an "adult entertainment establishment" subject to the licensing and zoning restrictions of SOB Ordinance No. 504. Plaintiff has failed to present any competent summary judgment evidence refuting defendants' proof. It is well-established that a party, in responding to a summary judgment motion cannot discharge its burden by referring to the mere allegations or denials made in its pleadings.[46] "Rather, the nonmoving party's response must, either by submitting opposing evidentiary documents or by referring to evidentiary documents already in the record, set out specific facts showing the existence of a genuine issue for trial." [47] Further, plain-

---

**42.** *Id.* at § 2.01(B)(24).

**43.** These investigations also revealed that one dancer, upon making a solicitation for prostitution to the officers (which also involved her minor sister), was arrested on the premises, in violation of state law. *Id.* at Exhibit D, affidavits of officers Kevin Matheny and Johnny Guzman.

**44.** *Id.* at Exhibit F.

**45.** *Id.,* Exhibit E, at 2 and Exhibit J (Ms. Mauldin's inspection reports).

**46.** FED. R. CIV. P. 56(e); *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505; *State of Texas v. Thompson,* 70 F.3d 390, 393 (5th Cir.1995).

**47.** *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548; *Fields,* 922 F.2d at 1187; *Neff,* 58 F.3d at 1065; *Engstrom v. First Nat'l Bank,* 47 F.3d 1459, 1462 (5th Cir.1995), *cert. denied,* 516 U.S. 818, 116 S.Ct. 75, 133 L.Ed.2d 35 (1995); and *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (holding that a non-movant cannot discharge her burden with doubt as to the material facts, by conclusory allegations, unsubstantiated assertions, or by only a *scintilla* of evidence).

tiff's position is inconsistent with the evidence of record which establishes that on numerous occasions plaintiff applied for an "adult cabaret" license under the Ordinance, placing itself under the requirements of the Ordinance.[48] In addition, there is also summary judgment evidence of record that plaintiff has specifically benefitted from the non-conforming use and amortization provisions of the Ordinance.[49] Having concluded there is no genuine issue of material fact with respect to the application of SOB Ordinance No. 504 to plaintiff's business, I will next discuss plaintiff's constitutional challenges to the Ordinance.

2. *Is SOB Ordinance No. 504 Constitutional?*

Plaintiff challenges the constitutionality of the Ordinance by arguing that it constitutes a prior restraint ("as applied") on its free speech. While it is well-settled that non-obscene nude dancing is protected by the First Amendment of the United States Constitution, even if "only marginally so," [50] it is also clear that the government can regulate such activity.[51]

In *Barnes v. Glen Theatre, Inc.*, the United States Supreme Court, in a plurality opinion, held that an enactment banning public nudity, as applied to nude dancing, can be upheld as a "content-neutral" time, place, and manner regulation if it comports with the intermediate scrutiny test enunciated in *United States v. O'Brien.*[52] According to *O'Brien:*

> [A] government regulation is sufficiently justified [1] if it is within the constitutional power of the government; [2] if it furthers an important or substantial government interest; [3] if the governmental interest is unrelated to the suppression of free expression; and [4] if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.[53]

Further, under the intermediate scrutiny standard, the government bears the burden of justifying (*i.e.*, both the burden of production and persuasion) the challenged statute or regulation.[54] "However, the litigant challenging the regulation bears the burden of proving that the regulation does

---

**48.** Docket Entry 18, at Exhibits D & E.

**49.** *Id.* at Exhibit D.

**50.** *See Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 565–66, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991) ("nude dancing of the kind sought to be performed here is expressive conduct within the outer perimeters of the First Amendment, though we view it as only marginally so."). It should be noted that while the First Amendment marginally protects non-obscene nude dancing, the dancers' conduct as described by the undercover law enforcement officer, *supra*, may be considered obscene nude dancing, not entitled to any First Amendment protection.

**51.** *See City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 46, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986); and *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 70, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976) ("[E]ven though we recognize that the First Amendment will not tolerate the total suppression of erotic

materials that have some arguably artistic value, it is manifest that society's interest in protecting this type of expression is of a wholly different, and lesser, magnitude than the interest in untrammeled political debate.").

**52.** *Barnes*, 501 U.S. at 567, 111 S.Ct. 2456.

**53.** *O'Brien*, 391 U.S. at 376–77, 88 S.Ct. 1673; and *Barnes*, 501 U.S. at 570, 111 S.Ct. 2456 (where the Court, after applying the *O'Brien* test, upheld Indiana's prohibition on public nudity, as applied to nude dancing).

**54.** *See Renton*, 475 U.S. at 48, 106 S.Ct. 925. *See also J & B Entertainment Inc. v. City of Jackson*, 152 F.3d 362, 370 (5th Cir.1998); and *Turner Broadcasting Systems, Inc. v. FCC*, 512 U.S. 622, 664–65, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994) (reaffirming that under the intermediate scrutiny standard of review, the government bears the burden of justifying the challenged enactment).

not allow for reasonable alternative avenues of communication because it denies him a reasonable opportunity to open and operate his business."[55]

In the instant case, plaintiff does not dispute the City's constitutional authority to enact SOB Ordinance No. 504 under its police powers,[56] nor does plaintiff contest the characterization of the Ordinance as a "content-neutral" time, place, and manner regulation, subject to the intermediate scrutiny standard.[57] What plaintiff contests in this case is mainly element two of the *O'Brien* test, that is, the City's ability to establish that the Ordinance furthers a substantial government interest.[58] Further, plaintiff contends that the Ordinance does not allow for reasonable alternative avenues of communication because it denies him a reasonable opportunity to operate its business.[59] The summary judgment record, however, does not support plaintiff's contentions.

 *a.* *Whether the Ordinance "furthers an important or substantial governmental interest?"*

█ Element two of the *O'Brien* test requires the City to prove that the Ordinance is narrowly tailored to further a substantial interest.[60] The Fifth Circuit in *SDJ, Inc. v. City of Houston* explained the City's burden as follows:

a city may establish its substantial interest in the regulation by compiling a record with evidence that it may be reasonably believed to be relevant to the problem that the city addresses. We do not ask whether the regulator subjectively believed or was motivated by other concerns, but whether an objective lawmaker could have so concluded, supported by an actual basis for the conclusion. *Legitimate purpose may be shown by reasonable inferences from specific testimony of individuals, local studies, or the experiences of other cities.*[61]

Accordingly, the City "must produce evidence that the challenged ordinance may advance its interest in combating adverse secondary effects attendant to nude dancing."[62] The First Amendment, however, does not require a city, before enacting such an ordinance, to conduct new studies or produce evidence independent of that already generated by other cities, as long as "whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses."[63]

A local government's interest in preserving the quality and character of neighborhoods and urban centers, can, if properly set forth, support restrictions on both public nudity and adult entertainment.[64] "In setting forth this interest, a local govern-

**55.** See *Baby Dolls Topless Saloons, Inc. v. City of Dallas,* 114 F.Supp.2d 531, 545 (N.D.Tex. 2000) (denying injunctive relief to plaintiff and finding regulation constitutional) (citing *Woodall v. City of El Paso,* 49 F.3d 1120 (5th Cir.1995)).

**56.** Docket Entry 28, at 1.

**57.** *Id.* at 2 & 10.

**58.** *Id.* at 2–12.

**59.** *Id.* at 13–17.

**60.** *Renton,* 475 U.S. at 49–50, 106 S.Ct. 925.

**61.** 837 F.2d 1268, 1274 (5th Cir.1988) (Emphasis added) (internal citations omitted), *cert. denied,* 489 U.S. 1052, 109 S.Ct. 1310, 103 L.Ed.2d 579 (1989).

**62.** *J & B Entertainment,* 152 F.3d at 371.

**63.** *Renton,* 475 U.S. at 51–52, 106 S.Ct. 925; and *City of Erie v. Pap's A.M.,* 529 U.S. 277, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000).

**64.** *Renton,* 475 U.S. at 50, 106 S.Ct. 925 (stating that the government's " 'interest in attempting to preserve the quality of urban life is one that must be accorded high respect' ") (quoting *Young* 427 U.S. at 71, 96 S.Ct. 2440).

ment may place great weight upon the experiences of, and studies conducted by, other local governments, as well as opinions of courts from other jurisdictions." [65] Importantly, a local government can meet its burden of introducing sufficient evidence to justify the challenged ordinance either by developing evidence of secondary effects prior to the enactment of the ordinance *or* by adducing such evidence at trial.[66] "[The courts'] appropriate focus is not an empirical inquiry into the actual intent of the enacting legislature, but rather the existence or not of a current governmental interest in the service of which the challenged application of the statute may be constitutional." [67] While the evidence produced by the government must demonstrate "a link between the regulation and the asserted governmental interest [...] under a reasonable belief standard [...], legislation seeking to combat the secondary effects of adult entertainment need not await localized proof of those effects." [68] Finally, an ordinance is narrowly tailored if it effectively promotes the government's interest, but narrow tailoring is less important when the potential for overbreadth burdens sexually oriented expression, as such expression is subject to less than full First Amendment protection.[69]

In applying these legal principles to the instant case, I find that the City has justified that SOB Ordinance No. 504 is narrowly tailored to further a substantial interest. The City's substantial interest in addressing actual or potential secondary effects associated with sexually-oriented businesses is well-established through the following summary judgment evidence: the Preamble to the Ordinance which describes the purpose and intent for enacting the Ordinance; the sworn affidavits of individuals who were directly involved in the study, development and enactment of the Ordinance; and the official minutes of three City Council meetings where promulgation of the Ordinance was considered. In addition to providing evidence of the adverse secondary effects the City considered prior to enacting the Ordinance, the City has also provided evidence consisting of law enforcement data detailing current incident reports involving plaintiff's business. This evidence further supports the City's continued "governmental interest" in enforcing the Ordinance. I will proceed to discuss in detail each of these pieces of evidence.

As stated in the Preamble to the Ordinance, the City's intent in enacting the Ordinance was to protect the general welfare of its residents from the harmful secondary effects associated with adult entertainment establishments. The City determined that in order to guard against these harmful secondary effects, uniform regulations setting forth location and distance restrictions were necessary to avoid concentration of these establishments within the City. It is evident that the purpose of the Ordinance was not to restrict the content of sexually-oriented expression; but rather, to combat the harmful secondary effects associated with the establishment of sexually oriented businesses in the community. To that

65. *Id.* at 51, 96 S.Ct. 2440; and *City of Erie,* 529 U.S. at 296, 120 S.Ct. 1382.

66. *See Barnes,* 501 U.S. at 582, 111 S.Ct. 2456 (Souter, J., concurring); and *J & B Entertainment,* 152 F.3d at 371–72.

67. *Barnes,* 501 U.S. at 582, 111 S.Ct. 2456 (Souter, J., concurring); *see also J & B Enter-*

*tainment,* 152 F.3d at 371–72; *City of Erie,* 529 U.S. at 300–01, 120 S.Ct. 1382 (Souter, J., concurring)

68. *Barnes,* 501 U.S. at 582, 111 S.Ct. 2456 (Souter, J., concurring).

69. *SDJ,* 837 F.2d at 1276; and *Baby Dolls,* 114 F.Supp.2d at 546.

extent, the Preamble to the Ordinance expressly states:

It is the purpose of the Ordinance to regulate Adult Entertainment Establishments to promote the health, safety, morals and general welfare of the citizens of the City, and to establish reasonable and uniform regulations to prevent the concentration of Adult Entertainment Establishments within the City. *The provisions of this Ordinance have neither the purpose nor effect of imposing a limitation or restriction on the content of any communicative materials, including sexually oriented materials. Similarly, it is not the intent nor effect of this Ordinance to restrict or deny access by adults to sexually oriented materials protected by the First Amendment* or to deny access by the distributors and exhibitors of sexually oriented entertainment to that intended market.[70]

The summary judgment record further demonstrates that prior to the enactment of the Ordinance, the City had sufficient evidence to reasonably conclude that the threat of harmful secondary effects associated with adult entertainment establishments was real, and because some of these establishments were already operating in the City unregulated, it was one that needed immediate attention.

For instance, according to the sworn testimony of former City Manager, Marion (Gene) Thorpe, the proposal to enact an ordinance to regulate sexually oriented businesses first originated in the early 1990's when the City became aware of Bexar County's efforts to close massage parlors, video outlets and other sexually oriented activities along Interstate Highway Ten, east of the City. According to Thorpe, the City also took into consider-ation the problems the neighboring city of Leon Valley was already experiencing with sexually oriented businesses. Because of the City's adjacent location to Randolph Air Force Base, and "being the largest suburb in the San Antonio area," Thorpe then asked the City Attorney at the time, Ron Flake, to develop an ordinance to regulate sexually oriented business activities in the City. Moreover, according to Thorpe, the City already had a twenty-four hour video shop which sold/rented explicit videos and which was the subject of many citizen complaints as to why "[the City] let that type activity exist in our community unregulated." [71] Thorpe further states that he personally discussed the legal requirements of a sexually oriented business ordinance with the City Attorney, and after studying the ordinance enacted by Leon Valley and that city's work in regulating sexually oriented businesses in its community, he and the City Attorney drafted a proposed ordinance which was presented to the City Council for its consideration. According to Thorpe, "[t]he development of the proposed ordinance took some time as we wanted it to cover every aspect of Sexually Oriented Businesses so that we [the City] could properly regulate that type of business in Universal City." [72]

In addition to Thorpe's affidavit, the City has presented the sworn testimony of Wesley D. Becken, the City's current Mayor and former City Councilman. During his tenure in the City Council, Becken was involved in the pre-enactment work of SOB Ordinance No. 504. According to Becken, the City Council in 1994 instructed the then City Attorney, Mr. Flake, to:

review legal precedent and to gather a number of ordinances from other cities

---

70. Docket Entry 18, Exhibit A, Article I of the Ordinance, "Purpose and Intent."

71. Docket Entry 36, Affidavit of Gene Thorpe.

72. *Id.*

that may have experienced concerns with sexually oriented businesses. We [the City Council] requested this information to ensure that we were knowledgeable about the effects of [sic] sexually oriented businesses have on area citizens, especially in a small suburb like the City of Universal City.[73]

Becken further states that Flake, along with Thorpe, reviewed the ordinances from similar cities and provided the council with a proposed ordinance. According to Becken, the City Council "understood that the proposed ordinance took into account the legal requirements necessary to regulate sexually oriented businesses."[74] Becken further describes the City Council's concerns at the time it was considering enacting the Ordinance as follows:

There was concern regarding the close proximity of Randolph Air Force Base and the possibility of their declaration of "off limits" on a business establishment in Universal City. There is a long established outstanding relationship with the military and our city that is not to be tarnished if at all possible. There was further concern with the type of clientele drawn to sexually oriented businesses including the strong possibility of the introduction of crime activity to include illegal narcotics, prostitution, etc.[75]

Becken's description of the City Council's concerns is corroborated by the sworn testimony of Richard Crow, a fellow former Councilman, in which he states that:

The consensus of the council was that this type of business would be counter productive for the City in terms of attracting undesirable activity and people to the City and cause family strife without proper regulation. We [the City Council] felt healthy economic develop-ment and property values would suffer from these kinds of establishments moving into our City without proper regulation. We already had one x-rated video store which, we were told, had an unfavorable history according to police records. Our intent was to keep this type of business away from our residences, churches and children.[76]

The City has in addition provided the sworn testimony of former City Attorney Flake, in which he describes the legal work performed in anticipation of developing and enacting the Ordinance. According to Flake, he performed "some legal research related to the constitutionality of such ordinances and reported to the City Council that the courts have recognized that sexually oriented businesses could have a negative effect on church's [sic], schools and family life." Further, Flake informed City Council that case law "has also recognized an increase in criminal activity attributed to sexually oriented businesses as well as reduction in residential market value for property surrounding the businesses." Specifically, in terms of the background and legal work he performed in connection to the enactment of the Ordinance, Mr. Flake states:

Additionally, I contacted some area cities including the City of Leon Valley and one that I cannot recall the name, located in North Texas. I got several ordinances from different cities and discussed them with City Manager Thorpe and because we already had three (3) sexually oriented businesses in town, I decided now was a good time to approach the City Council with a proposed ordinance as requested. I prepared a draft ordinance from the case law I reviewed and the ordinances obtained

---

**73.** *Id.*, Affidavit of Wesley D. Becken.

**74.** *Id.*

**75.** *Id.*

**76.** *Id.*, Affidavit of Richard Crow.

from other cities that had been tested in some respect and held up from scrutiny. I do not recall the specific names of the cities nor do I recall the specific ordinances because this all occurred almost 7 years ago. During discussion before the City Council there was a lot of concern regarding the distances used in the ordinance with discussions from as little as 200 ft. to as much as 500 ft., geographically. It was determined that geographically, the larger distance was better leaving only limited distances for other businesses because the City is primarily a bedroom community for the larger City of San Antonio.[77]

Mr. Flake then concludes his testimony by stating that the proposed ordinance was discussed in two or three city council meetings before it was approved on April 5, 1994.[78]

This summary judgment evidence demonstrates that the City and its Council members were well-informed concerning the harmful secondary effects associated with sexually oriented businesses at the time the Ordinance was considered, developed and ultimately adopted in 1994. The sworn testimony of four of the individuals who took part in the enactment of the Ordinance makes clear that the concern intended to be addressed with the enactment of the Ordinance was the secondary effects sexually oriented businesses have on the area, not what erotic expression may derive from it. Their testimony further shows that the City acted in a reasonable manner by relying on evidence that it believed to be relevant to the issue because sexually oriented businesses were controversial in neighboring municipalities and in the unincorporated area of Bexar County, adjacent to the City.

As the United States Supreme Court stated in *Barnes, Renton, Young,* and more recently in *City of Erie,*[79] the courts' concern "is not an empirical inquiry into the actual intent of the enacting legislature, but rather the existence or not of a current governmental interest in the service of which the challenged application of the statute may be constitutional."[80] The evidence adduced unquestionably demonstrates that there was a need for zoning

---

77. *Id.*

78. *Id. See also* City Council minutes of regular meetings held on March 1, 1994, March 15, 1994 and April 5, 1994. *Id.* The Ordinance has since been amended once, on May 2, 2000. Docket Entry 18, Exhibit A.

79. The Court's holding in *City of Erie v. Pap's A.M.,* followed its decision in *Barnes* and is consistent with recent nude dancing cases. The plurality's opinion clarified *Barnes* by stating that bans on public nudity should be evaluated under the framework set forth in *O'Brien* for "content-neutral" restrictions on symbolic speech. Because the Court has continually held nude dancing to be expressive conduct, the application of the *O'Brien* test to these cases is appropriate. According to the holding in *City of Erie,* as long as an ordinance is content-neutral and is targeted at combative negative secondary effects, local governments can regulate erotic dancers and require them to wear G-strings and pasties. Further, the *City of Erie* opinion once again reiterated the view that local governments can use past court decisions to substantiate the presence of secondary effects in their communities. While plaintiff in this case does not agree with the Court's decision in the *City of Erie* case, the opinion nevertheless represents the latest pronouncement from the Court in this area of the law (where plurality opinions have not been uncommon, *see Renton* and *Barnes*), and it is consistent with precedent. Because the *City of Erie* case is indeed relevant to the issues presented in this case, plaintiff's arguments challenging the binding authority of that opinion are without merit. *See* Docket Entry 28, at 7–12.

80. *City of Erie,* 529 U.S. at 300–01, 120 S.Ct. 1382 (Souter, J., concurring); *Barnes,* 501 U.S. at 582, 111 S.Ct. 2456 (Souter, J., concurring); *Renton,* 475 U.S. at 50, 106 S.Ct. 925; and *Young,* 427 U.S. at 71, 96 S.Ct. 2440.

restrictions for sexually oriented businesses in the City to guard against the secondary effects sexually oriented businesses were having on area communities. The legal arguments made by plaintiff fail to negate the City's production of more than adequate evidence to support the City's reasonable belief that the Ordinance was necessary to combat harmful secondary effects.[81] While the City's evidence of legislative support mainly consists of sworn testimony in the form of affidavits, the court finds them appropriate for purposes of meeting the City's burden. The affidavits are based on personal knowledge and recount the individuals' direct involvement with the enactment of the Ordinance. Significantly, the substance of these witnesses' testimony has remained unchallenged by plaintiff.

Finally, besides the evidence detailing the information the City relied upon prior to enacting the Ordinance, the City has also provided evidence involving recent incidents occurring in the immediate vicinity of plaintiff's business and on its premises. This evidence establishes the City's "governmental interest" to continue guarding against harmful secondary effects through the enforcement of the Ordinance.[82] Based on this evidence, I find that the City has met its burden of establishing element two of the *O'Brien* test, that is, the City has proved that SOB Ordinance No. 504 is narrowly tailored to further a substantial interest.

### b. Whether the Ordinance leaves open reasonable alternative avenues for communicating sexually oriented expression?

 Plaintiff contends that because there is no specific zoning district reserved for the location of sexually oriented businesses in Universal City Ordinance No. 400, the City's Zoning Code (referred to and incorporated in § 3.01 of SOB Ordinance No. 504), no permissible location exists for the establishment of its business in the City. For the reasons discussed below, plaintiff's position is not supported by the summary judgment record.

According to the analysis in *Renton,* an ordinance is constitutional if it does not unreasonably limit alternative avenues of communication.[83] However, the fact that sexually oriented businesses "must fend for themselves in the real estate market, on an equal footing with other prospective purchasers and lessees, does not give rise to a First Amendment violation", and the First Amendment does not compel "the government to ensure that [sexually oriented businesses], or any other kind [ ] of speech-related business [ ] for that matter, will be able to obtain sites at bargain prices."[84] The First Amendment only requires that the government "refrain from effectively denying [adult entertainment businesses] a reasonable opportunity to open and operate an adult theater within the city."[85] To this end, courts have held that 5–10% of land available for sexually oriented businesses constitutes a reason-

---

**81.** In addition, the record further shows that because three of such businesses were operating in the City at the time the Ordinance was enacted, the City included the appropriate provisions to permit business owners to recover their operating costs over the next three years. Docket Entry 36, at 2 (citing to § 3.02 of the Ordinance).

**82.** Docket Entry 18, Exhibit G, police reports dated May 6, 1996, July 22, 1998, November

13, 1998 and September 20, 1999, detailing incidents of public intoxication, simple assault and aggravated assault causing serious bodily injury on a dancer.

**83.** *See Renton,* 475 U.S. at 45, 106 S.Ct. 925.

**84.** *Id.* at 54, 106 S.Ct. 925.

**85.** *Id.*

able opportunity to pursue alternative avenues for communication.[86]

In the instant case, § 3.01 of Ordinance No. 504 requires an adult entertainment establishment to be located within a specific zoning district as set forth in the City's Zoning Code.[87] Additionally, § 3.01 contains distance requirements to separate sexually oriented businesses from other land uses as determined by the City.[88]

Interpreting that provision consistently with the City's Zoning Code, a sexually oriented business such as that of plaintiff's may be located in any "Class-2 Medium Intensity Land Use District," [89] as long as it meets the distance requirements.[90] In fact, according to the City Council meeting held on March 1, 1994, it has always been the City's intent to allow sexually oriented businesses to be located in the "Class 2" zoning district as a "conditional use." [91]

---

**86.** *Id.* (holding the availability of 5% of land in Renton for adult theaters constitutional). *See also Woodall,* 49 F.3d at 1126–27 (holding that at least 50–66 sites available for 22–39 businesses was adequate); *Lakeland Lounge of Jackson, Inc., v. City of Jackson,* 973 F.2d 1255, 1259–60 (5th Cir.1992) (holding that because there is no constitutional requirement that a specific proportion of a municipality be open for sexually oriented businesses or that a certain number of sites be available, the availability of 4 areas with 8–10 locations for 6 businesses was more than adequate); *SDJ,* 837 F.2d at 1276 (holding that the availability of at least 40 sites within 20% of Houston for 23 businesses was adequate).

**87.** Docket Entry 18, Exhibit A.

**88.** *Id.*

**89.** *Id.,* Exhibit B, Article II, District Regulations, Section 6.

**90.** According to these requirements, a sexually oriented business shall not be situated (1) within five hundred (500) feet of a church, school, daycare center or public park; (2) within three hundred (300) feet of a boundary of a residential district or property line of a residential use; (3) or within one thousand (1,000) feet of another licensee. *Id.* at Exhibit A, § 3.01(A).

**91.** Docket Entry 36, City Council's minutes. Ordinance No. 400, Section 6 of Article II, District Regulations, describes "Class-2" Medium Intensity Land Use District as follows:
The "Class-2" Medium Intensity Land Use District has been created to establish and preserve areas of medium intensity land use primarily devoted to higher density residential and general commercial development. The following regulations shall apply to the "Class-2" Medium Intensity Land Use District.
A. *Permitted Uses:* The following principal uses, their accessory uses and structures, as well as customary home occupations where applicable, are permitted.
(1) Multi-family residential dwellings
(2) Places [of] worship
(3) Municipal facilities
(4) Public facilities
(5) Private recreation facilities
(6) Child Care Center
(7) Commercial recreation facilities
(8) Offices
(9) Retail stores
(10) Wholesale salesrooms
(11) Personal service establishments
(12) Dining and drinking establishments
(13) Public Schools
(14) Temporary Construction Offices
B. *Conditional Uses:* The following principal uses, their accessory uses and B. structures may be permitted with an approved site plan and the issuance of a conditional use permit.
(1) Hospitals
(2) Hotels and Motels
(3) Shopping Centers
(4) Mobile home and recreation vehicle parks
(5) Establishments for on-site alcoholic beverage consumption
(6) Service stations
(7) Automobile sales and repairs
(8) Mortuaries
(9) Veterinary care facilities
(10) Mini-storage units
(11) Circus and carnivals
(12) Nurseries
(13) [Christmas tree sales-deleted by subsequent amendment to the Ordinance, ORD 400–M–98]
(14) Video arcades

The City has produced an official "color-coded" zoning district map showing the available sites in the "Class-2" zoning district for the location of sexually oriented businesses.[92] While the map shows that plaintiff's business is currently located within the "Class-2" zoning district, its location is not only within 300 feet of a residential district, but immediately adjacent thereto.[93] It is undisputed that plaintiff's current location violates the Ordinance.[94] According to the map, the City has identified 10 available sites that meet the distance requirements within the "Class 2" zoning district for the lawful location of plaintiff's business. The reasonable availability of these sites has not been controverted by plaintiff.[95] While it may be true that some of these locations may not have the commercial infrastructure desired by plaintiff, the proper inquiry, for purposes of First Amendment analysis, is whether the Ordinance unreasonably limits alternative avenues of communication for the location of plaintiff's business in the City; not whether the alternative locations are "commercially viable" or "economically feasible" for plaintiff.[96]

A zoning regulation is constitutional if "there was any possible rational basis for legislation."[97] Here, the location and distance restrictions for the establishment of sexually oriented businesses within the City's "Class 2–medium intensity land use district" have a rational basis and do not violate plaintiff's due process protected by the Fourteenth Amendment. Moreover, these requirements are consistent with the City's Zoning Code and the City's zoning practices, and their enforcement has not been shown to have been motivated to restrict sexually oriented expression, especially plaintiff's. For these reasons, I conclude that the zoning provision of SOB Ordinance No. 504 is a "content-neutral" time, place, and manner regulation that does not violate the First Amendment, even if it incidentally burdens plaintiff's protected expression. There is no evidence that the City has denied a reasonable opportunity for plaintiff to pursue alternative avenues of communication by relocating to a site that meets the zoning criteria. For these reasons, plaintiff's claim that the zoning provision violates its protected expression fails as a matter of law.

3. *Are Defendants Bryant and Becken Entitled To The Defense Of Qualified Immunity?*

The defense of qualified immunity need not be addressed in this case as plaintiff has failed to prove a violation of a well-established constitutional right.[98] Specifi-

---

Docket Entry 18, Exhibit B.

**92.** Docket Entry 36, Official Zoning District Map, as attached to the affidavit of Michelle Mauldin.

**93.** *Id.*

**94.** Docket Entry 18, Section II, "Uncontested Facts," at 4, ¶ 8; and Docket Entry 28, at 13.

**95.** While plaintiff disputes a statement allegedly made to plaintiff's counsel by Ms. Mauldin, which nevertheless does not create a fact issue because it is hearsay, there is no competent summary judgment evidence of record showing that plaintiff had formally attempted to comply with the location and distance restrictions as set forth in the Ordinance and that the City thwarted those efforts.

**96.** *See* cases cited in fn. 86, *supra.*

**97.** *SDJ Inc.,* 837 F.2d 1268, 1273 (5th Cir. 1988) (citing *Shelton v. City of College Station,* 780 F.2d 475, 479 (5th Cir.), *cert. denied,* 477 U.S. 905, 106 S.Ct. 3276, 91 L.Ed.2d 566 (1986)).

**98.** *See Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); and *Hay-*

cally, plaintiff has failed to establish that the City violated its constitutional right to free speech under the Fourteenth Amendment through the enactment and enforcement of SOB Ordinance No. 504. As discussed earlier, the City has met its burden of establishing that the licensing and zoning restrictions of Ordinance No. 504 further a substantial government interest. Contrary to plaintiff's position, there is no genuine issue of material fact with respect to the reasonable alternative avenues of communication the Ordinance provides for sexually oriented expression in the City.

With respect to defendants Bryant and Becken being sued in their official capacities, those claims should be dismissed because they are duplicative of the claims brought against the City. It is well-settled that a suit against a public official in his "official capacity" is, in effect, a suit against the municipality or governmental entity the official represents.[99] Accordingly, plaintiff's claims against defendants Bryant and Becken in their official capacities are actually asserted against the City, which is already a named-defendant in this lawsuit. Consequently, such claims are duplicative and are hereby *dismissed.*[100]

### G. Conclusion

Accordingly, defendants' motion for summary judgment (Docket Entry 18) on plaintiff's constitutional challenges to SOB Ordinance No. 504, and claims brought against defendants Bryant and Becken in their official and individual capacities, is hereby *GRANTED* in its entirety; and plaintiff's cross-motion for summary judgment (Docket Entry 28) is hereby *DENIED.* Plaintiff has failed to allege facts

sufficient to entitle it to relief such that there is no genuine issue of material fact under the applicable legal standards. As such, plaintiff's lawsuit pursuant to 42 U.S.C. § 1983 is *DISMISSED WITH PREJUDICE.* The parties shall bear their own court costs.

With respect to defendants' request for an award of attorneys' fees, the court notes that under 42 U.S.C. § 1988, a district court may award attorneys' fees to a prevailing party in a § 1983 suit.[101] Accordingly, defendants are hereby directed to file and serve their motion for an award of attorneys' fees with supporting documentation within fourteen days after entry of this judgment, as required under FED. R. CIV. P. 54 and Local Rule CV–7(i)..

---

ter v. *City of Mount Vernon,* 154 F.3d 269, 274 (5th Cir.1998).

**99.** See *Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); *Kentucky v. Graham,* 473 U.S. 159, 165–66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); and *Esteves v. Brock,* 106 F.3d 674, 677 (5th Cir.1997).

**100.** *Kentucky,* 473 U.S. at 167, n. 14, 105 S.Ct. 3099.

**101.** It should be noted that to the extent defendants have requested an award of attorneys' fees on the basis that plaintiff's lawsuit is "meritless" or "frivolous," that request is *denied* Docket Entry 18, at 15–16.